## COUNTY OF LYON v. FIRST NATIONAL BANK OF BALATON.
## NATIONAL SURETY COMPANY, APPELLANT.[1]

January 29, 1926.

No. 25,007.

Assent of county to release of depositary bank and substitution of new debtor not conclusively established so that county could not proceed against bank and its surety.

The county had funds on deposit in the defendant bank and in the First State Bank of Balaton. The last mentioned bank took over the assets and assumed the liabilities of the defendant bank. The county treasurer was notified and made entries in his books showing the transfer of the funds, and transacted no business with the defendant bank thereafter. He made deposits in the First State Bank and drew checks upon it in an amount in excess of the credit balance of the county in both banks when they attempted to consolidate. There was no other evidence of the consent of the county to the transfer of its funds from one bank to the other. If effect be given to the transaction between the two banks, there would be a deposit in the First State Bank in excess of the amount allowed by the statute. *Held*:

That the relation between the depositary banks and the county was that of debtor and creditor; that, to release the defendant bank and substitute a new debtor in its place, the assent of the county was necessary; that such assent was not conclusively established by proof of the treasurer's knowledge of the transaction and of his apparent acquiescence; that it did not conclusively appear that there was a complete novation which would preclude the county from proceeding against the defendant bank and its surety to recover the amount due at the time of the attempted consolidation; and that the rule that items on the credit side of a mutual account will be applied to the discharge or reduction of the earliest items on the debit side is not applicable in the absence of evidence establishing a complete novation.

Depositaries, 18 C. J. pp. 579 n. 19; 585 n. 41; 597 n. 10.

Evidence, 22 C. J. pp. 133 n. 31; 141 n. 62.

Novation, 29 Cyc. pp. 1131 n. 12, 13, 14; 1132 n. 19; 1134 n. 24, 25 New, 26.

[1]Reported in 207 N. W. 138.

Action in the district court for Lyon county against defendant bank and its surety upon a bond. The case was tried before Olsen, J., who ordered judgment in favor of plaintiff. Defendant appealed from an order denying its motion for a new trial. Affirmed.

*Cherry & Davenport* and *C. T. Howard,* for appellant.

*Rolland Mathews,* County Attorney, for respondent.

LEES, C.

Appeal by the National Surety Company from an order denying its motion to set aside findings and grant a new trial of an action on a depositary bond given by the defendant First National Bank of Balaton to the county of Lyon, on which the appellant is surety. The summons was not served on the bank and it did not answer or appear.

The facts set forth in the findings are as follows:

Prior to April 21, 1924, the defendant bank and the First State Bank of Balaton had been duly designated as depositaries of the county's funds and each had given the bond required by G. S. 1923, § 848, the defendant bank in the sum of $12,000, and the First State Bank in the sum of $20,000. The sureties on the last mentioned bond were resident freeholders of Lyon county. On April 19, 1924, the county had a deposit of $5,057.06 in the defendant bank and a deposit of $8,311.02 in the First State Bank. On April 17, 1924, the officers of the two banks executed a contract whereby the defendant bank agreed to transfer to the First State Bank, as of the close of business on April 19, 1924, all the assets of the first-named bank, and pay in addition the sum of $25,000, provided a voluntary assessment of that amount was paid by the stockholders, and the First State Bank agreed to pay the liabilities of the defendant bank. The contract was approved by the board of directors of both banks and by a majority of the stockholders of the defendant bank. On or about April 21, 1924, the officers of the two banks joined in a letter to the depositors, notifying them of the so-called consolidation and of the fact that the First State Bank had assumed the deposit liabilities of the defendant bank. One of the letters was ad-

dressed to and received by the treasurer of Lyon county. On April 26 he made certain entries in his books to show that $5,057.06 had been withdrawn from the defendant bank and deposited in the First State Bank. On or about May 1 the First State Bank sent him an itemized statement of his account with the defendant bank from April 1 to April 20, and a separate statement of his account with the First State Bank for the entire month of April. The first statement showed the county's credit balance as of April 20, and was followed by the words: "Transferred to First State Bank of Balaton account." In the separate statement of the First State Bank these words appear: "Transferred from F. N. B. Balaton," followed by the figures 5,057.06. That sum was carried into the balance shown to be due from the First State Bank on May 1 and was represented in the monthly statements subsequently furnished to the treasurer. All these statements were filed with the county auditor pursuant to G. S. 1923, § 853. After April 20 neither the treasurer nor the county transacted any business with the defendant bank. On December 8, 1924, the county board of audit examined the treasurer's books and found that he had on deposit in the First State Bank funds of the county amounting to $14,623.89, and, on January 8, 1925, the county board made like findings. The treasurer continued to do business with' the First State Bank after April 20 and until July 25, 1924, when the bank was taken over by the superintendent of banks. Between those dates the treasurer made deposits of more than $27,000, and checked out more than $25,000.

If effect be given to the transfer of April 20, the county had a credit balance in the First State Bank of $14,623.89 when the bank failed, and at all times after April 20 the balance exceeded $10,000.

Since June 28, 1924, the defendant bank has been in process of liquidation under the Federal banking laws. Its stockholders did not pay the assessment of $25,000 for which provision was made in the agreement for consolidation. Neither the county, the county board, the board of audit nor the surety company, had notice or knowledge of any of the transactions mentioned until this action was commenced on November 15, 1924.

These facts are the basis of the court's conclusion that the county had not waived its right to look to the defendant bank and the surety on its bond for the amount due from the bank at the time of the so-called consolidation.

Counsel for appellant contend that the transaction between the two banks, with the subsequent conduct of the county treasurer, accomplished the same result as though the treasurer had drawn a check for $5,057.06 on the defendant bank, making it payable to the First State Bank, and had delivered it to the last-named bank for deposit to the credit of the county. From this premise the conclusion is drawn that on April 20, 1924, the defendant bank paid the sum mentioned to the county.

It is probably true that county treasurers have authority to transfer county funds from one depositary bank to another, subject to the condition that an "overdeposit" is not made in the bank to which the funds are transferred. It is also true that the relation between a depositary bank and a county is the same as in the case of any other depositor, viz: That of debtor and creditor. Board of Co. Commrs. v. Citizens Bank, 67 Minn. 236, 69 N. W. 912.

In the instant case, the defendant bank attempted to discharge its debt by substituting the First State Bank as the debtor. The essentials of a novation are well known. In such a case as this it must appear that the old debt was extinguished and became the obligation of the new debtor as the result of the mutual agreement of all the parties concerned. Cornwell v. Megins, 39 Minn. 407, 40 N. W. 610, Barnes v. Hekla Fire Ins. Co. 56 Minn. 38, 57 N. W. 314, 45 Am. St. 438, and that there was a consideration for the promise of the new debtor to assume and pay the debt. Hanson v. Nelson, 82 Minn. 220, 84 N. W. 742.

The courts have generally held that, although a release may be established by proof of facts and circumstances from which an implication thereof would reasonably arise, the making of a new contract by which a third party becomes obligated to the creditor to pay the previously existing indebtedness of another does not alone give rise to the presumption that the original debtor was released.

See Michigan Stove Co. v. A. H. Walker & Co. 150 Iowa, 363, 130 N. W. 130, Ann. Cas. 1912D, 505, and the decisions cited in Ann. Cas. 1912D, 508.

But it has been held that a creditor's assent is not conclusively established by proof of his knowledge of an agreement by which a new firm takes up the debts of the old, the acceptance of a partial payment of the debt by the new firm, and a demand by the creditor for the payment of the balance, Walker v. Wood, 170 Ill. 463, 48 N. E. 919, and that, in order to effect a novation, there must be a clear and definite intention on the part of all concerned that such is the purpose of their agreement. The question is whether the parties intended to extinguish the old debt and place the creditor in a position where he could rely only on the obligation of the new debtor, or whether they intended to keep the old debt alive. This question is one to be decided from a consideration of the facts and circumstances of each particular case. Fidelity Ins. T. & S. D. Co. v. Shenandoah Valley R. Co. 86 Va. 1, 9 S. E. 759, 19 Am. St. 858; Fidelity L. & T. Co. v. Engleby, 99 Va. 168, 37 S. E. 957; 20 R. C. L. 366.

In the case at bar, the county's assent to the release of the defendant bank and its surety is referable solely to the conduct of the treasurer. We attach no importance to the fact that after this action was commenced the treasurer's books were examined and his accounts audited by the board of audit and the county board and found to be correct. Had the treasurer been a private citizen who had deposited his own money in the defendant bank, the conclusion might be justified that he had elected to affirm the transaction between the two banks and release the one and look only to the other for the payment of the amount of his deposit in the first; but it must be borne in mind that he was a public officer with powers and duties defined by statute. His authority was limited. He was merely the custodian of the money he received in his official capacity, charged with the duty of depositing it, as soon as he received it, in a bank or banks which had been designated as county depositaries. G. S. 1923, § 846. He could not lawfully deposit in any bank an amount in excess of the capital stock and permanent surplus of the

bank, Id., and, because the First State Bank had given a bond of $20,000 with individual sureties, he could not lawfully deposit more than $10,000 in that bank. G. S. 1923, § 848; Vlissengen v. Board of Co. Commrs. 54 Minn. 555, 56 N. W. 251; Board of Co. Commrs. v. Gray, 61 Minn. 242, 63 N. W. 635. These provisions of the statute are mandatory, and neither the treasurer nor the county board, which has the care and management of county funds (G. S. 1923, § 668, subd. 2), had any authority to make a deposit in any other place or on any other terms than those prescribed by statute. Board of Co. Commrs. v. Security Bank, 75 Minn. 174, 77 N. W. 815.

If the treasurer had authority to bind the county, did his conduct preclude the county from asserting its claim against the defendant bank and its surety? The evidence shows that the treasurer made no objection to the attempt of the two banks to transfer liability to the county from one to the other. Apparently he acquiesced, for he made entries in his books indicating that he regarded the transfer as an accomplished fact. An important circumstance should be mentioned here. If the total deposit in the defendant bank had been withdrawn and redeposited in the First State Bank, the result would have been an overdeposit of $3,368.08. To sustain appellant's contention, it is necessary to assume that the treasurer intentionally did that which he could not do without subjecting himself and the sureties on his bond to personal liability to the county, and surely that inference is not to be drawn lightly.

In short, the circumstances permit more than one inference. It may be inferred that the treasurer adopted the transaction between the two banks insofar as it affected the county, or that he neither adopted nor disaffirmed it. If the second inference is permissible, and we think it is, an essential element of a complete novation is lacking. Although the First State Bank partially performed its undertaking to discharge the obligation of the defendant bank, consent to the release of that bank is not necessarily to be inferred. Such performance is not inconsistent with the existence of continued liability on the part of the defendant bank, for, if the payments by the First State Bank were made in the capacity of agent

for the original debtor, the county has the right to pursue either bank. Maddy v. Nat. Life Ins. Co. 156 Minn. 375, 194 N. W. 880; Detroit P. S. S. Co. v. Schermack, 179 Mich. 266, 146 N. W. 144, Ann. Cas. 1915D, 287.

A complete novation was not established conclusively and the trial court was not bound to find in appellant's favor on that theory.

It is next urged that in no event can there be a recovery because all the money the county had on deposit in the defendant bank was paid out by checks drawn on the First State Bank. In Board of County Commrs. v. Citizens Bank, supra, it was held that the account between a county and a depositary bank is a mutual current account and that, when the bank draws upon it without any express stipulation or agreement between it and the county, the law will apply each item on the credit side of the account to the discharge or reduction of the earliest items on the debit side; in other words, according to the priority of time.

The debit item of $5,057.06 was entered in the county's account with the First State Bank on April 20, when that bank already owed the county $8,311.02. The checks drawn thereafter amounted to more than $13,368.08. These facts are the basis for the argument that all the credit items in the county's account as it stood on April 20 have been wiped out and that the balance due when the First State Bank failed consisted wholly of deposits made after April 20. The fallacy in this lies in the assumption that, when the item of $5,057.06 was credited to the county by the First State Bank, to all intents and purposes that sum was drawn from the defendant bank and redeposited. But, if there was no valid novation, the First State Bank received the money as the agent of the defendant bank and the liability of its principal continued to exist.

The rule by which the courts are guided in applying payments on a running account was carefully considered in Hersey v. Bennett, 28 Minn. 86, 9 N. W. 590, 41 Am. Rep. 271. It is this: Where there is an open current account the items of which do not form a distinct debt but are blended together in one account so that only the general balance is considered due, payments not appropriated by either party to a particular item will be applied by the court ac-

cording to priority of time, or, as sometimes expressed, "there being no special facts to interfere * * * the first money in is the first money out." First Nat. Bank v. McNairy, 122 Minn. 215, 142 N. W. 139, Ann. Cas. 1914D, 977. This rule is not artificial or arbitrary. It is founded on the presumed intention of the parties and is applicable only where there is no evidence sufficient to show a contrary intention. American W. Co. v. Maaget, 86 Conn. 234, 85 Atl. 583, Ann. Cas. 1913E, 889.

In the case at bar, the debit item of $5,057.06 represented a distinct debt and, in the absence of a complete novation, the defendant bank and its surety remained primarily liable therefor. Both the county and the First State Bank might invoke the rule, stated above, but we think the appellant is not in a position to do so.

The case for the appellant has been thoroughly briefed and argued and has received our careful consideration. The vital questions are those we have discussed. In determining them, we have decided the case and nothing need be said about other matters mentioned in the briefs.

Order affirmed.