### COOPER GROCERY CO. v. STRANGE et al.
### (No. 1006—5185.)

Commission of Appeals of Texas, Section B. June 28, 1929.

610

Witt, Terrell & Witt and James P. Alexander, all of Waco, for plaintiff in error.

W. L. Eason and John McGlasson, both of Waco, for defendants in error.

LEDDY, J. Plaintiff in error, the Cooper Grocery Company, brought this suit against M. D. Dugger & Son, a partnership composed of M. D. Dugger and M. D. Dugger, Jr., and W. L. Dugger and G. R. Strange, to recover the sum of $36,667.75, alleged to be due on nine promissory notes payable to it. Eight of these notes, aggregating $23,000, were executed by M. D. Dugger & Son. One note in the sum of $13,667.75 was executed by M. D. Dugger & Son as principals and W. L. Dugger as surety. It was alleged by plaintiff in error that the payment of $10,000 of the last-named note was secured by a written guaranty, signed by defendants in error W. L. Dugger and G. R. Strange. As a defense to the notes sued on, M. D. Dugger & Son pleaded their discharge in bankruptcy.

The trial was with a jury. The following special issues were submitted and answered by the jury, viz.:

"Special Issue No. 1: Did W. L. Dugger know, before he delivered said guaranty contract to J. R. Milam that same contained the clause: 'And any indebtedness created on this day or hereafter?' " To which the jury answered, "No."

"Special Issue No. 2: Did W. L. Dugger believe when he signed the contract of guaranty that same covered only $10,000.00 of the purchase price of said assets?" To which the jury answered, "Yes."

"Special Issue No. 3: Did J. R. Milam authorize W. L. Dugger to represent to G. R. Strange that the Cooper Grocery Company would sell the assets of the Dugger Grocery Company to M. D. Dugger & Son if he, the said G. R. Strange and said W. L. Dugger would execute a guarantee covering $10,000.00 of the purchase price of said assets?" To which the jury answered, "Yes."

"Special Issue No. 4: Did W. L. Dugger represent to G. R. Strange that the Cooper Grocery Company would sell the assets of the Dugger Grocery Company to M. D. Dugger & Son, if he, the said G. R. Strange and W. L. Dugger would execute a guarantee covering $10,000.00 of the purchase price of said assets?" To which the jury answered, "Yes."

"Special Issue No. 5: Did G. R. Strange know that the contract of guaranty covered any indebtedness, except $10,000 of the purchase price of said assets?" To which the jury answered, "No."

"Special Issue No. 6: Did G. R. Strange rely upon said representations, if any, in signing said contract of guaranty?" To which the jury answered, "Yes."

Upon this verdict the court rendered judgment in favor of the plaintiff in error, the

Cooper Grocery Company, against defendants in error G. R. Strange and W. L. Dugger, jointly and severally, for the sum of $10,000, the amount covered by their written guaranty and against W. L. Dugger as surety for the balance of $13,667.75 note, and adjudged that plaintiff in error take nothing as against M. D. Dugger & Son.

It was shown that on and prior to December 3, 1923, the Dugger Grocery Company, a corporation, operated a retail grocery store in the city of Waco, Tex. It purchased the principal part of its merchandise from the plaintiff in error, the Cooper Grocery Company. On the above-named date, the Dugger Grocery Company made an assignment for the benefit of its creditors, and the plaintiff in error became the purchaser of its assets, paying the sum of $22,000 therefor. It appears that after such purchase plaintiff in error was desirous of selling such assets to M. D. Dugger & Son. At that time there was a balance due plaintiff in error by the Dugger Grocery Company amounting to $5,279.75. After considerable negotiations between W. L. Dugger, who was a son of M. D. Dugger, and a son-in-law of G. R. Strange, and J. R. Milam, who was representing plaintiff in error, an agreement was reached whereby plaintiff in error agreed to sell to M. D. Dugger & Son all of the assets, formerly owned by the Dugger Grocery Company, for a consideration of $22,000, plus the sum of $5,279.75, making a total consideration of $27,279.75, said indebtedness under the agreement was to be evidenced by promissory notes signed by M. D. Dugger & Son, and secured by a chattel mortgage on the portion of the assets sold, consisting of furniture and fixtures, and, by an assignment of all notes and accounts which were a part of such assets, and the further consideration that the payment of $10,000 of such purchase money should be guaranteed by W. L. Dugger and G. R. Strange.

No controversy is presented by the evidence as to the terms of the sale of this stock of goods, as all the parties to the transaction testified that the above was the consideration agreed upon. The reducing of the contract of guaranty, to be executed by Dugger & Son, to writing, was intrusted to J. R. Milam, the agent of plaintiff in error. In preparing the guaranty, he used a printed form in use by his company, merely filling in with pen and ink the names of the parties and the amount of the guaranty, "Ten Thousand Dollars." After the same was so filled out, the portion material here reads as follows:

"I, we, or either of us, hereby guarantee to the said The Cooper Grocery Company, its successors and assigns, unconditionally the payment of any indebtedness of M. D. Dugger & Son now existing in favor of said the Cooper Grocery Company, of Waco, Texas, not to exceed the sum of Ten Thousand Dollars, *and any indebtedness created on this day or hereafter until notice in writing by registered mail,*" etc.

Mr. Milam, the representative of the Cooper Grocery Company, who negotiated the deal and prepared the written guaranty, admits that nothing was said in the oral agreement for the sale of the stock of groceries in reference to W. L. Dugger and G. R. Strange guaranteeing the payment of anything beyond the $10,000 of the purchase price.

Plaintiff in error insists that, in addition to the recovery awarded by the trial court, it was entitled to judgment against W. L. Dugger and G. R. Strange on the eight notes aggregating $23,000 executed by M. D. Dugger & Son, as the same represented an indebtedness due it created after the execution of the written guaranty, while defendants in error contend that the guaranty in so far as it attempted to create a liability on their part for any sum in excess of $10,000 of the purchase price of the stock of goods, was in express violation of the true agreement of all the parties, and that such provision was fraudulently inserted in the written guaranty without their knowledge or consent; hence it was not binding upon them. Plaintiff in error sought to avoid such plea by alleging that, if defendants in error did not know the guaranty contained such provision at the time they signed it, such failure was due to their negligence in signing the same without reading it; that they were afforded full opportunity to familiarize themselves with the contents thereof before signing it, but neglected to do so, and were therefore bound by all its terms.

■ The issue as to whether defendants in error were guilty of negligence in signing the guaranty without reading it and becoming aware of its provisions constituted an affirmative defense on the part of plaintiff in error. Such issue was not submitted to the jury, nor was any request made for its submission. Unless, therefore, we are able to say from the facts adduced that defendants in error were guilty of negligence as a matter of law in signing the guaranty without reading it, such issue has been waived. Ormsby v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084; Bulin v. Smith (Tex. Com. App.) 1 S. W.(2d) 591; Clearman v. Graham (Tex. Civ. App.) 4 S.W.(2d) 581.

■■ It may be seriously doubted whether plaintiff in error is in position to avail itself of the defense that defendants in error were guilty of negligence in failing to read the guaranty before signing it. Under the undisputed evidence, plaintiff in error's representative inserted a provision materially affecting defendant in error's liability, which he admits was not agreed to, in the oral contract made with them. Under such circumstances the insertion of such provision in the written guaranty was, to say the least, con-

structively fraudulent. A person intrusted with the duty of reducing an oral contract to writing should not be allowed to insert a provision therein which he knows does not represent the true agreement of the parties and then be permitted to claim that the other party should be bound by such provision because of his failure to use due care to discover the fraudulent act. Buchanan v. Burnett, 102 Tex. 492, 119 S. W. 1141, 132 Am. St. Rep. 900; Texas Banking Co. v. Hutchins, 53 Tex. 61, 37 Am. Rep. 750.

■ We do not deem it necessary, however, to rest our decision upon this proposition, because under the view we take of the record in·this case we think it clearly appears that there was an issue of fact presented as to whether defendants in error were guilty of negligence in signing the guaranty without fully apprising themselves of its contents. So far as W. L. Dugger is concerned, it was shown that there existed a very close and intimate relation between him and Mr. Milam, who prepared the guaranty. He had had business dealings with him through the company he represented for a period of more than fifteen years, and frequently sought his advice upon personal matters. In addition to this, Milam represented to him at the time the guaranty was drawn that it was for the sum of $10,000. Dugger did not wholly fail to inspect the guaranty, but observed from looking at it that it contained the words "Ten Thousand Dollars" written in ink, and from this presumed that it was drawn in accordance with the true agreement of the parties. Considering all the facts and circumstances, we are unable to say as a matter of law that he was guilty of negligence in signing the same without making a closer inspection thereof.

We think a similar conclusion is justified as to the signature of G. R. Strange to the written guaranty. He likewise had known Milam for a number of years; they being members of the same church and attended the same Sunday school. It was shown that the instrument was presented to him by his son-in-law, W. L. Dugger, with the statement that it was a guaranty of the payment of $10,000 of the purchase price of the stock of goods by M. D. Dugger & Son, which had been prepared by Milam. It appears that Mr. Strange was unable to read the fine print of the guaranty without his glasses, which he did not have in his possession at the time. He did, however, inspect the same to the extent that he read the larger words "Ten Thousand Dollars" written in ink, and, acting under the belief that he was carrying into effect the original contract to guarantee that amount of the purchase price of the stock of goods, signed the same. We conclude that the trial court correctly refused to render judgment against defendants in error on the written guaranty for the $23,000 indebtedness, which was no part of the purchase price of the stock of goods, and which was incurred subsequent to the execution thereof.

Defendants in error urged by proper assignment in the Court of Civil Appeals that the trial court erred in refusing to submit the issue requested by them as to whether the renewal of the $10,000 note and the balance due on the $5,279.75 note by M. D. Dugger & Son and W. L. Dugger was intended by the parties to discharge W. L. Dugger and G. R. Strange from liability on their written guaranty of $10,000 of the purchase price of the stock of groceries.

It appears that on February 7, 1925, defendants in error had paid plaintiff in error the sum of $12,000 on the original consideration, leaving an unsatisfied portion of the consideration unpaid, consisting of the $10,-000 note and a balance of $3,667.75 on the $5,279.75 note. At that time it seems that the firm of M. D. Dugger & Son was in financial distress and unable to pay the amount represented by the above notes. On this account the indebtedness was renewed by the execution of a new note for the sum of $13,-677.75, signed by M. D. Dugger & Son as principals and W. L. Dugger as surety, the old notes being marked "paid" and surrendered to defendants in error, but the written guaranty was retained by plaintiff in error. The new note was not signed by G. R. Strange and the renewal was had without his knowledge or consent.

It is vigorously urged that, by the cancellation of the old notes and the execution of the new note extending the time of payment, the original purchase-money note was settled, satisfied, and novated, and thereby neither of the defendants in error are liable on their written guaranty.

The question as to whether there was in fact a novation by the renewal transaction is immaterial so far as W. L. Dugger is concerned, because the judgment of the trial court against him is sustainable independent of his written guaranty; he having signed the $13,667.75 note as surety and presented no valid defense thereto. The only question, therefore, requiring consideration, is whether the issue of novation as to G. R. Strange was raised by the evidence so as to require its submission to the jury.

■ Novation is a mode of extinguishing one obligation for another—the substitution, not of a new paper or notes, but of a new obligation in lieu of the old one—the effect of which is to pay or otherwise discharge it. Dickinson v. Carter (Tex. Civ. App.) 246 S. W. 739; Guaranty State Bank v. Cleveland (Tex. Civ. App.) 195 S. W. 939; Pierce Fordyce Oil Ass'n v. Woods (Tex. Civ. App.) 180 S. W. 1181.

■ A contract of novation must be proved as other contracts are. It is never presumed, and must be clearly established by evidence

of a discharge of the original debt by express agreement or by acts of the parties clearly showing an intention to work a novation. Hughes v. Mattes, 104 La. 218, 28 So. 1006; Tuscaloosa Lumber Co. v. Tropical Paint & Oil Co., 211 Ala. 258, 100 So. 236; Hamlin v. Drummond, 91 Me. 175, 39 A. 551; Cockrill v. Johnson, 28 Ark. 193; Howland v. Gates, 62 N. H. 293; 29 Cyc. 1139.

Execution of a new note for notes secured is presumed not to extinguish the debt, and persons relying upon novation must establish the intention to release security already held. Rushing v. Citizens' Nat. Bank of Plainview (Tex. Civ. App.) 162 S. W. 460; Gimble v. King, 43 Tex. Civ. App. 188, 95 S. W. 7; Montgomery Bank & Trust Co. v. Jackson, 190 Ala. 411, 67 So. 235; Davis v. Welch, 128 La. 785, 55 So. 372; Frank v. Hardee, 22 La. Ann. 184; Hobson v. Davidson (La.) 8 Mart. (O. S.) 422, 13 Am. Dec. 294; Lyon County v. Balaton First Nat. Bank, 166 Minn. 109, 207 N. W. 138; Harrington-Wiard Co. v. Blomstrom Mfg. Co., 166 Mich. 276, 131 N. W. 559; Illinois Car & Equipment Co, v. Linstroth Wagon Co., 112 F. 737, 50 C. C. A. 504; Martin v. Breckenridge (C. C. A.) 14 F.(2d) 260.

It is true that whether a debt has been novated is ordinarily a question of fact, dependent upon the intention of the parties; but where there is no doubt as to the terms of the agreement it is a question of law. U. S. v. Grover (D. C.) 227 F. 181; Morecraft v. Allen, 78 N. J. Law, 729, 75 A. 920, L. R. A. 1915B, p. 1; 29 Cyc. 1140.

We think it apparent in the light of these well-settled principles of law that no issue of novation was raised by the evidence in this case. In the first place it was shown that plaintiff in error principally relied upon the execution of the written guaranty by Strange in making the original deal, as it positively refused to consummate the same unless he would sign the guaranty for $10,000 of the purchase price. This was no doubt due to the fact that Strange was possessed of substantial properties and was therefore thoroughly solvent. It is conceded that, when the renewal note was executed, which it is claimed operated to release Strange from his written guaranty, nothing whatever was said by any of the parties with reference to such guaranty. Plaintiff in error by the renewal received no additional security, as W. L. Dugger, who signed the same as surety, was already bound to the extent of $10,000 by the written guaranty and was also bound as a surety on the $5,279.75 note, the balance of which was included in the renewal note. No reason is assigned why plaintiff in error desired to voluntarily abandon a claim held against a thoroughly solvent guarantor without receiving anything in lieu thereof. As is said by our Supreme Court in Scott v. Atchison, 38 Tex. 384: "As a novation implies an abandonment by the creditor of

the first claim, for which the second is substituted, it is not to be easily presumed."

The renewal effected by the parties was in accordance with terms of the guaranty as it was therein stipulated: "And I, we, or either of us, consent to any extension of payment made, or hereafter made, and waive notice thereof, and waive the necessity of protest, notice and suit in all cases between said parties, and consent that the time and place of payment, or the form of said indebtedness, may be changed from account to note, bill or any other form of indebtedness."

There is, in our opinion, no evidence in the record showing, or tending to show, that plaintiff in error, by the acceptance of the renewal note, intended to release Strange from any liability upon his written guaranty. The mere renewal of the indebtedness, which is all that is shown, has been often held, as appears from the authorities cited above, to be insufficient to raise such issue, as the presumption prevails under such a transaction that the old debt is merely changed in form but not discharged.

Finally, it is insisted that, as M. D. Dugger & Son paid plaintiff in error a sum in excess of $10,000 on the purchase price of the stock of goods, the guarantors are entitled to have such payment applied as a credit on the amount for which they were liable under the guaranty executed by them; hence they are fully discharged.

It will be noted that under the terms of the guaranty defendants in error's liability was not referable to any specific part of the purchase price, but in general terms guaranteed "the payment of *any indebtedness* of M. D. Dugger & Son now existing in favor of the Cooper Grocery Company of Waco, Texas, not exceeding the sum of $10,000.00." "When the creditor in the original contract," said Chief Justice Taft, when a member of the Circuit Court of Appeals, "has received collateral covering the entire debt, and a personal guaranty on part of it, the legal and the natural presumption, in the absence of circumstances showing the contrary, is that he has taken the personal guaranty as additional or cumulative protection for his debt. In order that his debt may be paid, therefore, he has the right to exhaust all his securities, and in doing so he may apply the collaterals to that part of the debt not covered by the personal guaranty, and hold the guarantor to the full measure of his contract." Kortlander v. Elston (C. C. A.) 52 F. 180, 183.

All of the payments made to plaintiff in error were properly applied to the excess indebtedness not covered by the personal guaranty. Hanson v. Manley, 72 Iowa, 48, 33 N. W. 357; Gordon v. Bank, 115 Mass. 591; First Nat. Bank of Buffalo v. Wood, 71 N. Y. 405, 27 Am. Rep. 66.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed, and the judgment of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.