UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff-Appellee, v. KLEIN CORPORATION *et al.*, Defendants (Donna G. Klein, Defendant-Appellant).

First District (6th Division)   Nos. 1—88—2050, 1—88—3332 cons.

Opinion filed October 27, 1989.

Donald L. Johnson and Michael P. Fiflis, both of Johnson & Schwartz, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Lawrence R. Moelmann, and Bruce L. Carmen, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Defendants, Donna G. Klein and Klein Corporation, each appeal from separate orders granting summary judgment in favor of plaintiff, United States Fidelity and Guaranty Company (USF&G). The

cases were consolidated on appeal. Defendants contend that the order granting USF&G's motion for summary judgment was improperly entered where the evidence presented was incomplete and subject to multiple interpretations, that USF&G is not entitled to indemnity, and that the trial court erroneously found that there was no just reason to delay enforcement or appeal of its order.

The relevant facts are as follows. On April 1, 1982, USF&G entered into a master surety agreement with Klein Construction Company and various corporations controlled by Wayne Klein, Donna Klein's husband. The agreement was executed by Donna Klein.

On or about July 19, 1984, Klein Construction entered into a construction contract with the Chicago Transit Authority (the CTA). Klein Construction agreed to act as general contractor for the construction of a bus facility. The contract price was $25,686,000. USF&G issued performance and payment bonds in that sum, with Klein Construction as principal and the CTA as obligee.

On August 20, 1986, Klein Construction filed a petition for reorganization under chapter 11 of the Bankruptcy Code. On October 15, 1986, the CTA informed USF&G that Klein Construction had defaulted under the construction contract. The CTA demanded that USF&G fulfill its obligations as surety under the performance bond. The master surety agreement provides:

"In the event of *** (2) any *** default in any contract secured by BOND(s) *** SURETY shall have the right, in its discretion, to take possession of any part or all of the work under contract(s) secured by BOND(s) *** and, at the expense of UNDERSIGNED [defendant], to complete or cause completion of any such work, or relet or consent to the reletting or completion of such contract ***."

Prior to the date of default, the CTA had paid Klein Construction and its subcontractors $15,653,143.61 under the construction contract. After adjustments due to change orders, there remained a balance of $10,808,567.79 to be paid pursuant to the contract.

On October 23, 1986, USF&G filed suit against Klein Corporation, Wayne J. Klein and Donna Klein. USF&G alleged, among other things, that it was entitled to be reimbursed for various amounts it paid pursuant to the bonds.

On February 20, 1987, USF&G, the CTA and Paschen Contractors, Inc., entered into a tri-party contract assumption agreement for the completion of the CTA project. The parties executed a supplemental and an auxiliary agreement on March 5, 1987. The CTA accepted USF&G's offer of Paschen as completing contractor, and

agreed to pay Paschen $10,808,000 less amounts paid by the CTA under a previous estimate. Paschen was required to deliver to the CTA performance and payment bonds in the sum of $10,808,567.79. The CTA agreed to pay Paschen that amount and to look to Paschen and its surety as primary obligors in the event of a default by Paschen.

The CTA also agreed to reduce the penal limits of USF&G's performance bond by the following sums: the amounts paid for enclosure of the building and for all other work done subsequent to the CTA's demand of October 15, 1986; the amounts paid by USF&G to Paschen as completing or interim contractor; and the amounts paid by USF&G to satisfy claims for labor or material used or reasonably required by any third person in the performance of the contract.

On December 23, 1987, USF&G filed a motion for partial summary judgment against Donna Klein, and on August 3, 1988, USF&G filed a motion for summary judgment against Klein Corporation. In each motion, USF&G alleged that it had paid $5,580,128.70 pursuant to its indemnity agreement with defendants. The motions sought judgment in the amount of $5,315,869.10 and reserved the right to proceed against defendants in the future for other amounts paid pursuant to the indemnity agreement. In support of the motion, USF&G filed the affidavit of Anna Nolc Ramirez. Ramirez is a claims officer at USF&G and is in charge of handling all claims on performance and payment bonds issued to Klein Construction as principal. The affidavit stated that USF&G entered into various contracts and made various payments to contractors, that USF&G had paid Paschen $3,122,299.80, and had paid subcontractors $2,193,569.96. Attached to the affidavit were photocopies of the checks representing those payments.

On June 1, 1988, the trial court granted USF&G's motion and entered judgment in favor of USF&G in the amount of $5,315,869.10. The court found that there was no just reason to delay enforcement or appeal of the order.

Defendants first contend that USF&G was not entitled to indemnity from defendants for payments it made. Defendants argue that USF&G made the payments either in bad faith or as a volunteer, without legal obligation as a surety. USF&G maintains, however, that defendants' contention is based merely on speculation, conjecture and innuendo, and accordingly, fails to raise a genuine issue of material fact which would preclude entry of summary judgment.

On a motion for summary judgment, the trial court must determine whether there is a genuine issue as to any material fact that requires a trial. (*Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375

N.E.2d 468.) The motion should be granted when the pleadings, exhibits, depositions, and affidavits of record show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Nonetheless, summary judgment should be granted only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto. *Marquette National Bank v. Heritage Pullman Bank & Trust Co.* (1982), 109 Ill. App. 3d 532, 440 N.E.2d 1033.

The right to indemnification may arise either by reason of contract or by reason of common law indemnity principles. (*Tiffiny Decorating Co. v. General Accident Fire & Life Assurance Corp.* (1973), 12 Ill. App. 3d 597, 299 N.E.2d 378.) An indemnification contract is to be given a fair and reasonable interpretation based upon a consideration of all its language and provisions. (*Bates v. Select Lake City Theater Operations Co.* (1979), 78 Ill. App. 3d 153, 397 N.E.2d 75; *Burns v. Ford Motor Co.* (1974), 29 Ill. App. 3d 585, 331 N.E.2d 325.) Further, an indemnity contract or provision is to be construed as any other contract, and its meaning is to be determined from the language contained therein unless such language is ambiguous (*Mosley v. Northwestern Steel & Wire Co.* (1979), 76 Ill. App. 3d 710, 394 N.E.2d 1230), and a surety is entitled to stand on the language of the contract (*Fidelity & Deposit Co. v. Bristol Steel & Iron Works, Inc.* (4th Cir. 1983), 722 F.2d 1160).

The claim against defendants was grounded in paragraphs III(A) and IV(A) of the master surety agreement. Paragraph III(A) provides:

"UNDERSIGNED shall exonerate, indemnify and keep indemnified SURETY from and against any and all liabilities, losses and expenses of whatsoever kind or nature (including but not limited to, interest, court costs and counsel fees) imposed upon, sustained, or incurred by SURETY by reason of: (1) SURETY having executed, provided or procured BOND(S) on behalf of PRINCIPAL, or (2) UNDERSIGNED'S failure to perform or comply with any of the provisions of this AGREEMENT."

Paragraph IV(A) provides:

"The liability of UNDERSIGNED hereunder shall extend to and include all amounts paid by SURETY in good faith under the belief that: (1) SURETY was or might be liable therefor; (2) such payments were necessary or advisable to protect any of SURETY'S rights or to avoid or lessen SURETY'S liability

or alleged liability ***."

Thus, the contract expressly provided that if USF&G believed in good faith that it *might be* liable for the payments, it was entitled to indemnity from defendants for payments made. Although defendants correctly note that an indemnitee owes its indemnitor a duty of good faith and fair dealing (*Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112), the contract here vested USF&G with discretion limited only by a showing of fraud or bad faith. See, *e.g., Hess v. American States Insurance Co.* (Tex. Civ. App. 1979), 589 S.W.2d 548.

Defendants maintain that their response to USF&G's motion for partial summary judgment sufficiently raises the issues of fraud or bad faith. We disagree. Defendants have offered nothing in the way of counteraffidavit or documentary evidence that the payment was not "necessary or advisable to protect any of [USF&G's] rights or to avoid or lessen [USF&G's] liability or alleged liability." We do not believe that USF&G's failure to specifically allege good faith gives rise to an inference that it acted in bad faith.

Defendants cite *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 498 N.E.2d 697, for the proposition that due to the nature of a summary judgment petition, the failure of USF&G to submit evidence that payments it made were in good faith, were reasonable, or were its legal obligation give rise to an inference that the payments were unnecessary, unreasonable, and in bad faith. Defendants incorrectly interpret the *La Salle National Bank* case.

In *La Salle National Bank,* the court examined a mortgage agreement with an accompanying mortgage note together with a related bond resolution. Plaintiff moved for summary judgment, the trial court granted plaintiff's motion, and defendant appealed, alleging that a genuine issue of material fact existed. This court agreed with defendant's contention. The court, however, did not base its decision on the failure of the parties to submit evidence of good-faith compliance with the contract terms. Rather, the court found that the trial court had erred in failing to recognize the language in the contract which gave defendant discretion to permit certain payments. *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 498 N.E.2d 697.

Here, the trial court properly recognized the discretionary language in the master surety agreement which specifically stated that USF&G was entitled to indemnity from defendants provided it believed in good faith that it might be liable for the payments. Al-

though the courts in this jurisdiction have not interpreted similar language, in *Hess v. American States Insurance Co.*, comparable language was construed to vest the indemnitee with such discretion that it only can be challenged by a showing of fraud or bad faith. As we noted earlier, defendants have failed to introduce any evidence of fraud or bad faith.

■ Accordingly, we conclude that in the absence of any allegation of bad faith, the trial court reasonably could determine that USF&G acted in good faith when it made payments to the CTA and to various subcontractors.

Defendants next contend that the tri-party contract involving the CTA, USF&G and Paschen created a novation which released defendants from their obligations under the master surety agreement. Under the contract, the CTA released USF&G from its obligations as surety as to defaults by Paschen in its completion of the construction work commenced by Klein Construction. The CTA agreed that Paschen and its surety would be primarily liable for a default in performance by Paschen and would look to USF&G only as a secondary or excess obligor. Defendants conclude that this contract released them from any obligation under the original suretyship agreement because they were not parties to the new contract.

■ A novation occurs when a valid new contract or obligation is created and a valid existing contract or obligation is extinguished. (*Faith v. Martoccio* (1974), 21 Ill. App. 3d 999, 316 N.E.2d 164.) A novation may not be presumed, but rather, is an affirmative defense which must be established by a preponderance of the evidence. *Alton Banking & Trust Co. v. Schweitzer* (1984), 121 Ill. App. 3d 629, 460 N.E.2d 105.

■ Defendants failed to plead as an affirmative defense the novation argument or the argument that the tri-party contract released them from obligations under the master surety agreement. Accordingly, defendants have waived these arguments for purposes of our review. See Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d) (the facts constituting an affirmative defense must be pled or are waived).

Moreover, even if the novation argument were properly before this court, we believe that the new contract did not extinguish the obligations created under the existing agreement. The tri-party contract specifically states that USF&G's obligations under its performance bond incurred prior to the execution of the tri-party contract are unchanged. More importantly, paragraph VIII of the master surety agreement provides as follows:

"UNDERSIGNED shall not be relieved of liability hereunder

by any change, addition, substitution, continuation, renewal, extension, successor or new obligation in connection with BOND(S) or any contracts secured thereby, whether known or consented to by SURETY, and notice of SURETY'S consent is hereby waived."

Thus, defendants' obligations under the master surety agreement remain unchanged by the subsequent tri-party contract.

■ Furthermore, there is no indication that any portion of the tri-party contract would operate to release defendants from their obligations as indemnitor. A release requires an abandonment of a claim to the person against whom the claim existed (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456), and must be backed by consideration. (*American National Bank v. Warner* (1984), 127 Ill. App. 3d 203, 468 N.E.2d 184.) We find no suggestion that any right of indemnity conferred upon USF&G by the master surety agreement was abandoned to defendants. Similarly, we are unable to find any evidence of consideration. Accordingly, we conclude that the tri-party contract neither worked a novation which relieved defendants of their obligations under the master surety agreement, nor did it specifically release defendants from those obligations.

Defendants next argue that USF&G acted as a volunteer in payment for change orders approved prior to Klein Construction's default. Defendants maintain that because these change orders were made subsequent to the issuance of the bond, they were not included in USF&G's obligations under the bond. We disagree.

■ The master surety agreement obligates USF&G to make available sufficient funds to pay the costs of completing the contract, less the balance of the contract price. The term "balance of the contract price" is defined as "the total amount payable by Owner to contractor under the contract *and any amendments thereto*, less the amount properly paid by Owner to Contractor." (Emphasis added.) Thus, the contract contemplated amendments and obligated USF&G to cure defaults on outstanding change orders and to seek indemnity from defendants for those payments. Moreover, paragraph VIII of the master surety agreement specifically states that defendants' obligations are not changed by amendments to the contract. Thus, we conclude that USF&G acted pursuant to its contractual obligations and not as a volunteer.

Defendants also contend that USF&G's damages were not ascertainable from its motion for summary judgment. Defendants argue that questions of fact exist as to the amount of those damages.

■■ ■ An indemnitee has the right to settle claims against it and then sue the indemnitor. (*Boston v. Old Orchard Business District, Inc.* (1960), 26 Ill. App. 2d 324, 168 N.E.2d 71.) Thus, USF&G has the right to make the required payments to the CTA and to the various subcontractors. Furthermore, paragraph IV(C) of the master surety agreement provides that vouchers or other evidence of payments made under the belief that the surety was liable "shall be *prima facie* evidence of the fact and extent of the liability of UNDER-SIGNED to SURETY." Defendants did not provide any counteraffidavits, or other evidence, which would effectively rebut USF&G's *prima facie* evidence of liability. Accordingly, we believe the trial court properly concluded that USF&G's damages were ascertainable from its motion for summary judgment.

Defendants finally contend that the trial court improperly found that there was no just reason to delay the enforcement or appeal of its order granting partial summary judgment to USF&G. Defendants note that the order did not dispose of all the claims against them.

Initially we note that the master surety agreement specifically provides that separate suits on the agreement may be brought as causes of action accrue regardless of the status of other causes of action. Thus, the fact that other claims were asserted against defendants would not bar the trial court from finding that there was no just reason to delay the enforcement or appeal of the summary judgment order. Furthermore, subsequent to the entry of the summary judgment order, USF&G obtained a judgment against Wayne J. Klein and voluntarily dismissed all of its other claims. Accordingly, there are no other claims remaining, and the jurisdictional defect, if any, in the previous order is cured and we need not address defendants' contention.

For the foregoing reasons, the judgments of the circuit court of Cook County granting summary judgment in favor of USF&G and against Donna Klein and Klein Corporation are affirmed.

Judgments affirmed.

QUINLAN and La PORTA, JJ., concur.