**Willard O. VETTER, as Trustee for Vetter Stone Employees Savings and Retirement Plan and Vetter Stone Co., Money Purchase Pension, et. al., petitioners, Appellants,**

v.

**SECURITY CONTINENTAL INSURANCE COMPANY, a Delaware life insurance company (f/k/a Inter–American Insurance Company of Delaware), et al., Respondents.**

No. C6–96–843.

Supreme Court of Minnesota.

Aug. 21, 1997.

Masion, Edelman, Borman & Brand LLP, Gary J. Haugen, David F. Herr, Jonathan S. Parritz, Minneapolis, for Appellants.

Oppenheimer Wolff & Donnelly, David C. Bohrer, Chicago, IL, Oppenheimer Wolff & Donnelly, Edward M. Laine, Minneapolis, for Respondents.

## OPINION

STRINGER, Justice.

In this matter we are asked to consider whether a novation occurred releasing the original Illinois-based insurance company obligor from the terms of annuity contracts held by a Minnesota trustee. The trial court held that there was no material fact "remotely suggesting that the Plaintiffs *intended* to release the original insurance company * * *" under the standards of novation applied in either Minnesota or Illinois, and granted summary judgment to the claimants against the original insurance company obligor. Approximately $2 million in damages and costs was awarded. On appeal, the court of appeals reversed holding that there was a conflict between Minnesota and Illinois law

as to the standard of proof necessary to conclude a novation had occurred, that Illinois law should apply, and that there were material issues of fact under Illinois law as to whether a novation had occurred making the grant of summary judgment inappropriate. We reverse, concluding that there is no conflict between the law of novation of Minnesota and Illinois, as each state requires clear and definite proof that the obligee intended to release the first obligor from the terms of the agreement—a level of proof clearly missing here.

From January 1, 1984 to June 15, 1986, Inter–American Life Insurance Company of Dover, Delaware (IAD), sold group annuity insurance contracts (GACs) to 15 Mankato-area employee pension plans, the appellants in this action.[1] The GACs purchased by the appellants functioned like bank deposits and provided a return of the initial investment at retirement, plus guaranteed interest above a fixed minimum rate.[2]

Appellant Willard O. Vetter is trustee for two employer retirement plans that had purchased GACs from IAD. Among other terms of the agreement, the GACs contained a provision relating to changes in the specific contractual terms and provided that there must be agreement between the purchaser and the insurance company to affect any changes. IAD was the insurer with an Illinois address as its place of business, but at the time of purchase, IAD was not licensed to sell GACs in Minnesota.

On December 31, 1987, respondent Beaven/Inter–American Companies, Inc. (Beaven), owner of IAD, entered into an assumption reinsurance treaty (treaty) with its subsidiary Inter–American–Illinois (IAI) whereby IAI assumed the liabilities of IAD under the GACs at issue along with IAD's rights to future premium payments. The treaty included language that IAD ceded to

---

1. IAD also sold a whole life insurance policy to one individual named as a plaintiff/appellant in this action.

2. Under a GAC, each individual invests funds with the insurer who commingles the funds of all investors and uses its investment expertise to seek the maximum return on the funds. During the initial or accumulation phase of the contract, the insurer credits each individual account with interest reflecting the general accounts' investment return. In the second, or annuity phase of the contract, when a participant retires, the insurer is required to use the funds in the participant's account to purchase an annuity for the participant guaranteeing him or her a fixed stream of income for the rest of his or her life.

IAI, "all of its right title, and interest in the contracts and thereafter [IAD] shall have no liability except to the extent otherwise specifically set forth herein, of any kind or character with respect to the contracts."

The treaty contained two conditions precedent to its becoming effective: approval by the State of Illinois and approval by IAD's board of directors. Consent by the contract holders was not a condition precedent. Respondent alleges that on April 4, 1988, the contract holders were sent "Assumption Certificates" (certificates) advising them of the treaty and informing them of their opportunity to object. The certificates provided the following:

> [IAI] hereby assumes all liability under the Group Annuity [sic] Contract named above, in accordance with the terms and conditions of said Group Contract, * * * [IAI] shall become the insurer of the contract identified above on the earlier of the next contribution by the contractholder, or twenty (20) days from the date of mailing of this assumption certificate, unless the contractholder notifies either [IAD] or [IAI] in writing to the contrary.

The certificates did not state that the treaty had the effect of releasing IAD from its obligations to the policyholders, nor did they state that by not objecting to the treaty the contract holders would be presumed to be releasing IAD from all of its liabilities under the contracts. A letter accompanying the certificates further explained the treaty, and stated, in part: "This assumption simply means that Inter–American Insurance Company of Illinois assumes all contractual liability for your insurance coverage, as specifically outlined in your existing group contract." Similar to the certificate, the letter did not notify appellants that by not objecting to the treaty they would be presumed to be releas-

ing IAD from its obligations under the agreement; in fact, the letter reassured the contract holders that the transaction would not adversely affect their rights: *"[y]ou should be aware that this change will in no way affect the benefits afforded you under that agreement."* (emphasis in original). Respondent alleges that appellants consented to the assumption because none objected or otherwise sought performance from IAD, they had remitted payments to IAI, made claims to IAI, and accepted benefits from IAI. IAD engaged in no business and collected no premiums for three and a half years after the effective date. During this time period the treaty went unchallenged.

Apparently in an effort to acquire IAD's licenses to sell insurance in other states, Delta Dental Plan of Illinois (Delta), purchased from Beaven all the issued and outstanding stock of IAD on April 1, 1991. Following the sale, IAD changed its name to SCIC and commenced operations as a new business, severing all ties with former management, officers, directors, agents, and Beaven and any of its affiliates.[3] As part of the sale transaction, ownership of IAI was transferred to Beaven. On December 23, 1991, IAI was declared insolvent and was placed in liquidation by the Illinois Department of Insurance. Appellants have received no benefits under the contracts from either IAI or IAD since that date.[4]

In January of 1993 appellant brought a declaratory judgment action in Illinois state court against SCIC alleging breach of the GACs purchased by the plans for which he was a trustee, and seeking a declaration under Illinois law that SCIC remained liable to the GAC holders. SCIC asserted the affirmative defense of novation alleging that IAI had been substituted for IAD as the responsible party. The Illinois lawsuit was later voluntarily dismissed and on August 19, 1994,

---

**3.** Beaven did, however, agree to defend IAD in connection with any litigation related to pre-closing liabilities and to indemnify and hold Delta harmless in connection with pre-closing contracts.

**4.** As a result of the insolvency, the National Association of Life Health Guaranty Associations, acting as agent for the Minnesota Guaranty Association (MGA) and the Illinois Guaranty Association

(IGA), entered into an agreement with Jackson National Life Insurance Company (Jackson), whereby Jackson assumed coverage on all but one of appellant's contracts as part of a statutory, industry funded protection program to deal with losses as a result of a life or health insurance company becoming insolvent. *See* Minn.Stat. § 61B.01 *et seq.* (1986).

appellant filed the present lawsuit in Minnesota seeking to enforce against SCIC appellant's contract rights under the GACs. SCIC again alleged the affirmative defense of novation.

On August 9, 1995, the district court granted partial summary judgment to the appellants based on its finding that there was no "genuine issue of material fact remotely suggesting that the plaintiffs *intended* [through a novation] to release * * *" IAD from liability on the contracts. The court, citing *County of Lyon v. First Nat'l Bank of Balaton*, 166 Minn. 109, 207 N.W. 138 (1926), and *Security Benefit Life Ins. Co. v. Federal Deposit Ins. Corp.*, 804 F.Supp. 217 (D.Kan. 1992), ruled that, as a matter of law, there were no triable issues of fact supporting the respondent's theory that the appellants, by failing to object to the assumption reinsurance treaty and their subsequent conduct, consented to a novation. Summary judgment was granted in favor of appellants.

On review by the court of appeals, the court determined that Illinois law should have been applied to the question of whether there was a novation because the trustee of the Employers' Affiliated Trust—the trust designated to hold the GACs for the benefit of appellants—was located in Illinois, and the GACs provided that questions of law were to be determined in accordance with the law of the state where the contracts were delivered. Since the contracts were to be delivered to a trustee in Illinois, the law of that state must apply, so the court of appeals held. The court further held that genuine issues of material fact existed relating to whether the contract holders had consented to a novation because the contract holders submitted claims to IAI, accepted benefits from IAI, responded to IAI's insolvency, and all but one of them initially proceeded against IAI in this action. The court of appeals therefore reversed the district court's grant of summary judgment. *Vetter v. Security Continental Ins. Co.*, 555 N.W.2d 10 (Minn.App. 1996). We disagree with the conclusion of the court of appeals as to the existence of a conflict between the laws of Minnesota and Illinois as to the standard of proof of novation and the existence of material fact issues. We therefore reverse.

■ "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990); *see also Admiral Merchants Motor Freight, Inc. v. O'Connor & Hannan*, 494 N.W.2d 261, 265 (Minn.1992). A reviewing court must view evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted).

The transaction involved here is a reinsurance arrangement whereby an initial insurer protects itself against excessive loss on a risk by contracting with an additional insuring party to assume some or all of the responsibilities of the initial insurer. There is no direct benefit or additional risk to the insured. *See Barnes v. Hekla Fire Ins. Co.*, 56 Minn. 38, 40, 57 N.W. 314, 314 (1893); John Alan Appleman & Jean Appleman, *Insurance Law and Practice*, § 7741 at 596–601 (1976). It may be more specifically referred to as assumption reinsurance because the initial insurer conveys its rights with respect to the contract holders to the secondary insurer which assumes the responsibilities and liabilities of the initial insurer.[5] With respect to the circumstances here, the liability—to pay to the contract holders on the annuity con-

---

**5.** In 1991 the Minnesota legislature enacted section 60A.09, subdivision 4a, prohibiting assumption transactions, including assumption reinsurance agreements, with respect to any policies issued to Minnesota residents, unless the agreement:

[S]pecifically provides that the original insurer remains liable to the insured in the event the assuming insurer is unable to fulfill its obligations or the original insurer acknowledges in writing to the commissioner that it remains

liable to the insured in the event the assuming insurer is unable to fulfill its obligations * * *. Minn.Stat. § 60A.09, subd. 4a(2) (1996). Subdivision 4a(4) of the statute provides, in part, that the policyholder "retain[s] all rights with respect to your policy against your original insurer in the event the assuming insurer is unable to fulfill its obligations." The statute also provides that a policyholder may release the original insurer only "if the policyholder consents in a signed writing to a release of the original insurer from

tracts—was shifted to IAI, the secondary insurer. The issue is whether, despite the assumption of IAD's liability by IAI pursuant to the reinsurance agreement, there was sufficient proof of intention on the part of the contract holders to release IAD from liability under the contracts.

 Insurance policies are contracts and unless there are statutory provisions to the contrary,[6] general principles of contract law apply. *Waseca Mut. Ins. Co. v. Noska,* 331 N.W.2d 917, 926 (Minn.1983). As a general rule, and in the absence of a contractual provision to the contrary, an obligor on a contract may assign all beneficial rights to another, or may delegate his or her duty to perform under the contract to another, without the consent of the obligee. *See Epland v. Meade Ins. Agency Assoc., Inc.,* 564 N.W.2d 203, 207 (Minn.1997); *see also* 3 Williston on Contracts § 411, at 13–20 (3d ed.1960) [hereinafter "Williston"]. Notwithstanding the assignment however, the original obligor remains responsible for performance on the contract and if the performance is substantially different from that required of the original obligor, the original obligor may be liable. *See Epland* 564 N.W.2d at 207; *see also Tony & Leo, Inc. v. United States Fidelity & Guar. Co.,* 281 N.W.2d 862, 865 (Minn.1979); *State v. Wood,* 173 Minn. 406, 409, 217 N.W. 360, 361 (1928). In substance, the original obligor may not divest itself of liability without the consent of the obligee. Williston, *supra,* § 411 at 19; *see Tony & Leo,* 281 N.W.2d at 865. If the obligee consents to the delegation of duties, and agrees to release the original obligor from its responsibilities under the contract, a substitution of one party for another—or novation—occurs. Williston, *supra,* § 420 at 117; *see also Tony & Leo,* 281 N.W.2d at 865.

 A novation of an insurance contract in Minnesota requires proof of consent to release an original party from its liability under the contract appearing "distinctly * * * from the express terms of the agreement, or as a necessary inference from the

situation of the parties, and the special circumstances of the case * * *." *Barnes v. Hekla Fire Ins. Co.,* 56 Minn. at 42, 57 N.W. at 315. "A mere assignment does not absolve the obligations under a contract. Where an assignor seeks to prove a novation in order to be discharged from a binding contract * * * a clearly defined expression of consent * * * must be shown." *Tony & Leo,* 281 N.W.2d at 865; *see also Wood,* 173 Minn. at 408, 217 N.W. at 361 (stating that to constitute a novation, there must be an extinguishment of the liability as against the original obligor and the shifting of the obligation to a new party by mutual agreement between all parties) (citation omitted). The consent must be to the release of the liability of the original obligor and the assumption of the liability by the new obligor. *County of Lyon,* 166 Minn. at 113, 207 N.W. at 139. Finally, the proof of a novation under Minnesota law must be by evidence of a "clear and definite intention on the part of all concerned that such is the purpose of their agreement." *Id.*

Proof of a novation under Illinois law requires equally strong evidence of the parties' intention to release one obligor and substitute another. In *Burnett v. West Madison State Bank,* the Illinois Supreme Court held that the mere consolidation of two banks, and the continuance of plaintiff's deposit with the new bank, together with his acceptance of dividends in the liquidation proceedings, did not constitute a novation as a matter of law because "[n]ovation is never presumed. It is an affirmative defense and must be proved by *clear and competent* legal evidence." 375 Ill. 402, 31 N.E.2d 776, 780 (1941) (emphasis added). A side by side comparison of Minnesota's standard of proof by evidence of "clear and definite intention" with Illinois' standard of "clear and competent" evidence leads us to conclude they are but mirror images of each other.[7]

 We hold that based on applicable caselaw, the standards of proof in Minnesota and Illinois to determine whether a novation has taken place are the same, and because the choice of one state's law over another

---

liability and to a waiver of the protections provided [by this statute]." *Id.*

6. There are no statutory laws to the contrary which would change the character of the relationship in this matter.

7. Respondent cites three Illinois Court of Ap-

does not create an actual conflict, there is no choice of law issue. *Jepson v. General Cas. Co. of Wisconsin,* 513 N.W.2d 467, 469 (Minn. 1994). Since both states require the same level of proof, we need not reach the question of which state law is applicable under the agreements among the parties.

 We further hold that the totality of respondent's proof of novation falls short of the high standard of proof under Minnesota and Illinois law that the contract holders intended to release IAD from performance under the contracts and to look only to IAI. That the policyholders here were provided with the opportunity to object can hardly rise to the level of a clear expression of intent to accept a release of the initial obligor and accept a substitute, particularly in light of expressions of assurance that the reinsurance treaty "will in no way affect the benefits afforded you under the agreement"—an indication that perhaps even IAD did not intend a novation.

The decision of the court of appeals is reversed and summary judgment reinstated in favor of appellants.

Reversed.

peals cases in support of its argument that Illinois law requires that a novation be proven by a preponderance of the evidence only, a lesser standard of proof than Minnesota's "clear and definite" standard. As lower court opinions, we will not assume they overturn the standard adopted by the Illinois Supreme Court in *Burnett*. Furthermore, we do not read any of the cited cases as applying a preponderance of the evidence standard to the determination of whether a novation has been agreed to by all parties. In *United States Fidelity and Guar. Co. v. Klein Corp.,* 190 Ill.App.3d 250, 146 Ill.Dec. 848, 852, 558 N.E.2d 1047, 1051 (1989), the Illinois Court of Appeals did not address the question of whether a novation had occurred because the defendants had failed to plead novation as an affirmative defense. In *Greenbaum & Browne, Ltd. v. Braun,* 88 Ill.App.3d 210, 43 Ill.Dec. 303, 410 N.E.2d 303 (1980), the court set out the elements of a novation, the first of which is "a previous, valid obligation." *Id.* at 307, 410 N.E.2d at 307. The court did not address the issue of whether the second element, "a subsequent agreement by all the parties to the new contract," had been proven because it held that the plaintiff had

failed to prove by a preponderance of the evidence that there was a valid obligation in the first instance. *Id.* In light of *Burnett,* we assume Illinois courts would apply that higher standard of proof as to whether all parties had agreed to a novation. Finally, in *Phillips and Arnold, Inc. v. Frederick J. Borgsmiller, Inc.,* 123 Ill.App.3d 95, 78 Ill.Dec. 805, 810, 462 N.E.2d 924, 929 (1984), the court cited the "preponderance of the evidence" language of *Greenbaum,* but then held that no novation had occurred where the creditor had merely accepted partial payment from an additional obligor because "[i]n the absence of *clear proof* of novation," a third person's assumption of the obligation simply makes the third person an additional obligor. *Id.* at 810, 462 N.E.2d at 929 (emphasis added). Our conclusion that these three cases have not changed the standard set out in *Burnett* appears to be in accord with *Security Benefit Life. Ins. Co. v. F.D.I.C.,* 804 F.Supp. 217, 227 (D.Kan.1992), where Kansas and Illinois law were perceived as being in accord and *Burnett* was cited as requiring a novation to be proven by "clear and competent legal evidence."