MANOR HEALTHCARE CORPORATION, Plaintiff-Appellant, v. SOILTEST, INC., *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 1—88—3178

Opinion filed December 26, 1989.

Keck, Mahin & Cate, of Chicago (James J. Casey and Jill E. Evans, of counsel), for appellant.

Winston & Strawn, of Chicago (Harold C. Wheeler and George C. Lombardi, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Manor Healthcare Corp. (Manor), sought a judicial declaration that the maker of a "Contingent Promissory Note" (Note), Soiltest, Inc. (Soiltest),[1] and a related entity, Engineering Laboratory Equipment, Ltd. (ELE), or either of them, had been "sold, liquidated, merged, abandoned, discontinued, disaffiliated or otherwise disposed of." Manor also prayed for monetary "non-contingent" proceeds under the Note, plus interest, costs, and attorney fees, from Soiltest and John Mowlem & Co. PLC (Mowlem PLC), as guarantor.

Manor filed a motion for summary judgment claiming certain events had rendered 40% of the principal balance due under the Note fixed and noncontingent. Soiltest and Mowlem PLC (defendants) filed a cross-motion for summary judgment, asserting that the noncontingent provisions had not been triggered and no default had occurred. The circuit court denied Manor's motion and granted partial summary judgment in favor of defendants. From that ruling, Manor appeals. The issue raised here is whether, under the terms of the Note, certain transactions occurring within a corporate reorganization rendered a portion of the Note fixed and noncontingent.

Mowlem PLC, a corporation organized under the laws of the United Kingdom, is principally involved in international construction, property development, and mechanical engineering. In 1961, Mowlem PLC formed ELE as a subsidiary to provide materials testing and other technical services to the construction industry. ELE's business was concentrated in Europe, the Middle East, Africa, and the Far East.

In 1980, Mowlem PLC began negotiations with Cenco Medical Industries (Cenco) for the purchase of Soiltest, then a Cenco subsidiary. The acquisition of Soiltest was intended to give Mowlem PLC a "significant presence" in the United States and other international markets where ELE was not active. Soiltest's material testing products complemented those of ELE "in areas where American as opposed to British testing standards apply." Mowlem PLC formed a wholly

---

[1]The original maker of the Note, Ciro Acquiring Co. (Ciro), after merger with Soiltest, changed its name to Soiltest before suit.

owned subsidiary, Ciro Acquiring, Inc. (Ciro), specifically to acquire Soiltest.

On July 2, 1980, Ciro[2] executed the Note with a face amount of $1,100,000 in favor of Cenco, as partial consideration for the transfer and sale of Soiltest common stock by Cenco to Ciro. The Note was issued pursuant to a prior agreement for the purchase of Soiltest dated February 3, 1980. The "final deal" involved four different agreements. Mowlem PLC guaranteed payment of any unpaid installments of principal and interest on the Note that would become due and payable upon default by the payor. Manor, the successor in interest to Cenco, is the current payee under the Note.

Defendants submitted the affidavit of Frederick E. Worth, a Mowlem PLC negotiator for the purchase of Soiltest, with their cross-motion for summary judgment. He averred that Mowlem PLC discovered Soiltest's profits had "fallen dramatically" in the previous year. Concerned about Cenco's asking price, the parties agreed to an "earn out" as a compromise; according to Worth, the parties understood the "earn out" to provide that Mowlem PLC would pay further consideration to Cenco if Soiltest's profits exceeded predetermined levels. Cenco was concerned about the implementation of the "earn out" provision, because ELE and Soiltest were in similar businesses and Mowlem PLC could lessen the amounts due under the provision by diverting potential Soiltest profits to ELE. Cenco also hoped that the profit-making potential of ELE and Soiltest would be greater when part of the same company than if they remained separate. According to Worth, Mowlem PLC agreed that payments under the "earn out" would be tied to the combined profits of ELE and Soiltest, although Cenco had no affiliation with ELE.

Section 2 of the Note, entitled "Conditions to Payment of Principal and Interest," provides in part:

"On each Payment Date, interest accrued hereon to and including the preceding December 31, shall be payable but only to the extent that Annual Net Income (as hereinafter defined) for the fiscal year ending on such December 31 (on a non-cumulative basis) exceeds $2,500,000 (the 'Threshold').

* * *

Installments of principal * * * shall be payable on any Payment Date only to the extent of 75% of the excess of Annual Net Income (on a non-cumulative basis) for the fiscal year most recently preceding the year of such Payment Date over

---

[2]See footnote 1 for explanation of name change.

the sum of (i) the Threshold, (ii) the amount of interest payable by [Ciro] hereunder on such date by reason of the provisions of this Section 2, and (iii) the amount of interest payable by [Ciro] on such date on that certain Four Year Note of [Ciro] dated July 2, 1980, delivered to the payee pursuant to the Agreement *** .

'Annual Net Income' for any fiscal year shall mean the aggregate of (i) the consolidated pre-tax net income of Soiltest, Inc., an Illinois corporation, or any corporation *** which succeeds to substantially all of its business and assets, and its subsidiary, Houghton Manufacturing Company *** and (ii) the separate pre-tax net income of Engineering Laboratory Equipment Ltd. (ELE), an English corporation (so long as ELE remains an affiliate of [Ciro] or Soiltest) *** ."

Amounts due under the Note would remain contingent until the threshold was exceeded by combined Soiltest and ELE profits. In another affidavit submitted in support of defendant's cross-motion for summary judgment, Michael L. Bryant, vice-president of Soiltest, averred that this amalgamation of Soiltest and ELE profits resulted in payment under the "earn out" only once.

According to Worth, the parties contemplated instances when the profits of ELE and Soiltest could not be combined, as where the two companies were no longer affiliated or if one went out of business. In such case, section 2, in paragraph 4 (Paragraph 4) of the Note, provides:

"If, however, either ELE or Soiltest (or any substantial part of either out of the ordinary course of business) is sold, liquidated, merged, abandoned, discontinued, disaffiliated or otherwise disposed of, in that event 40% of the then outstanding principal balance of this Note shall become firm and shall no longer be contingent; provided, however, that this paragraph shall not apply to a merger or liquidation of Soiltest into [Ciro] *** ."

According to the succeeding provision (Paragraph 5), the remaining 60% of the outstanding principal balance would continue as contingent, except the threshold would be reduced by $1.5 million if ELE, or $1 million if Soiltest, was subject to such changes set forth in Paragraph 4.

Paragraph 6 of the Note contains the following provision:

"In the event of a transaction which results in a third party succeeding to substantially all the assets and businesses of [Ciro, now Soiltest] and ELE, [Soiltest] shall require that the

acquiring entity assume [Soiltest]'s obligations hereunder, and [Soiltest] shall not enter into any such transaction prior to the maturity hereof unless such acquiring entity shall have a net worth (immediately after giving effect to the acquisition) equal to at least twice the sum of the outstanding principal amounts (fixed or contingent) of this Note, the Four Year Note and the 'Note' as defined in the Agreement."

On December 15, 1980, Ciro merged with Soiltest, its wholly owned subsidiary pursuant to the purchase from Cenco, and changed the corporation's name to Soiltest, Inc. This merger was provided for in Paragraph 4 of the Note and did not trigger the contingency provisions. Prior to the merger, Ciro was a wholly owned subsidiary of John Mowlem, Inc. (J.M. Inc.), as was Mowlem Engineering Products, Ltd., now Mowlem Technology, Inc. (Technology, Inc.). J.M. Inc. was a subsidiary of Mowlem Technology Ltd. (Technology Ltd.), which in turn was a subsidiary of Mowlem PLC.

In 1983, Mowlem PLC decided to put its materials analysis business under a "unified management team." In October 1985, Mowlem PLC incorporated Buehler International, Inc. (Buehler International), as its indirect wholly owned subsidiary; Mowlem PLC then reorganized its material analysis subsidiaries (including ELE and Soiltest) into a holding company structure with Buehler as the parent. It was Mowlem PLC's belief that the reorganization would permit consolidation of marketing, coordination of research and development efforts, and better development of its materials analysis equipment division.

Pursuant to the reorganization, in November 1985, Technology Ltd., owner of ELE, transferred 100% of its shares in various subsidiaries, including ELE, to newly created Buehler Europe Ltd. (Buehler Europe), in exchange for shares in Buehler Europe. Technology Ltd. then transferred all of the shares of Buehler Europe to Buehler Holdings, Inc. (Buehler Holding), a wholly owned subsidiary of Buehler International, for approximately $10 million. Also, Technology, Inc., exchanged 100% of its shares of Soiltest and other companies to Buehler International, in return for 4 million shares of Buehler International stock. Both Soiltest and ELE thereby became subsidiaries of Buehler International.

On December 24, 1985, over 1.2 million shares of Buehler International common stock, representing 24% of its outstanding shares, were offered to the public. Technology, Inc., retained 76% of the shares.

Manor subsequently received the 1985 annual report from Buehler International, which described the transfer of Soiltest from Technol-

ogy, Inc., to Buehler International and the $10 million transferred to Mowlem PLC for 100% of ELE. In a letter dated July 2, 1986, Manor declared that Soiltest and ELE were "sold" by virtue of the intra-company transfers; it demanded from Soiltest the payment of $280,000, representing the portion which it claimed due and owing under Paragraph 4 of the Note by reason of such sales.

In a letter to Manor dated July 18, 1986, Soiltest denied that Paragraph 4 of the Note was activated by the corporate reorganization and insisted the Note remained contingent; further, it claimed that no amounts were due. Considering Soiltest's refusal to make payment a default, Manor, on September 15, 1986, made a demand for payment upon Mowlem PLC as guarantor of the Note. Mowlem PLC refused payment, referring Manor to Soiltest's letter of July 18.

According to Bryant's affidavit, the corporate reorganization of the Mowlem PLC companies in 1985 did not affect the affiliation of Soiltest and ELE, or the relationship of Soiltest and ELE to Mowlem PLC; by the reorganization "Mowlem transferred both [Soiltest and ELE] from one subsidiary within the Mowlem family to another." Worth, in his affidavit, averred that "so long as ELE and Soiltest are within the same corporate family, they are affiliated, their profits can be combined for purposes of the Note and no contingent amounts become due. Neither [Mowlem PLC] nor Cenco intended to make contingent amounts due and owing merely because of a corporate reorganization which required the intracompany transfer of stock within [Mowlem PLC]."

On October 3, 1988, after argument on the motion and cross-motion for summary judgment, the circuit court granted defendant's and denied Manor's motion, simply stating:

> "Okay. Many times I have to rule in instances where it's very close questions [*sic*], but I'm going to rule for the Defendant, against the Plaintiff."

Manor appeals.

Manor contends that the noncontingent provisions of Paragraph 4 were invoked by the "sale" or "other disposition" of Soiltest and ELE during Mowlem PLC's reorganization. Manor concludes 40% of the outstanding balance on the Note became firm and noncontingent, and therefore, Soiltest as payor and Mowlem PLC as guarantor are liable for that amount.

■ Defendants maintain the circuit court accurately interpreted the Note as a whole and gave effect to the language and intent of the contracting parties in denying Manor's claim that the reorganization required resort to the provisions of Paragraph 4. As noted, the court

did not state its reasons for its ruling; however, as defendants observe, they may support the judgment with any arguments and upon any basis appearing in the record, and we must sustain a correct decision for any reason or grounds appearing in the record. *Peters & Fulk Realtors, Inc. v. Shah* (1986), 140 Ill. App. 3d 301, 307-08, 488 N.E.2d 635.

In construing terms of a contract, the primary objective is to give effect to the intent of the parties, which should be determined from the language employed. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30.) Clear and unambiguous terms in the contract must be given their ordinary and natural meaning. (*Srivastava*, 168 Ill. App. 3d at 730; *Purolator Security, Inc. v. Wells Fargo Alarm Service* (1986), 141 Ill. App. 3d 1106, 1111, 491 N.E.2d 161.) In determining the intent of the parties, the contract must be interpreted as a whole, giving meaning and effect to every provision thereof (*St. John v. City of Naperville* (1987), 155 Ill. App. 3d 919, 923, 508 N.E.2d 1128); its various terms should be construed harmoniously throughout the document (*Long Grove Country Club Estates, Inc. v. Anderson* (1977), 47 Ill. App. 3d 449, 454, 362 N.E.2d 374). Where the terms of a contract are plain and unambiguous, the intent of the parties must be ascertained solely from the instrument itself (*AZL Resources, Inc. v. Bromagen* (1979), 79 Ill. App. 3d 76, 80, 398 N.E.2d 292); extrinsic evidence will not be considered. (See *Berutti v. Dierks Foods, Inc.* (1986), 145 Ill. App. 3d 931, 934, 496 N.E.2d 350.) A contract will be considered ambiguous where the language employed reasonably can be interpreted in more than one sense. (*Srivastava*, 168 Ill. App. 3d at 732.) Terms in a contract are not rendered ambiguous simply because the parties do not agree upon their meaning. (*Srivastava*, 168 Ill. App. 3d at 732; *White v. White* (1978), 62 Ill. App. 3d 375, 379, 378 N.E.2d 1255.) In the case at bar, the circuit court did not make an express finding regarding the document's ambiguity. Despite differing interpretations of the Note, both parties suggest its terms are unambiguous. We agree.

According to its clear terms, Paragraph 4 applies when *either* Soiltest *or* ELE is disposed of in a designated manner. When activated, this paragraph provides that 40% of any outstanding principal balance becomes firm and noncontingent. Paragraph 6 applies to any transaction wherein a third party succeeds to substantially all of the assets of *both* Soiltest and ELE, and assigns two obligations to Ciro (now Soiltest) in the event of such a transaction: (1) Soiltest shall require the acquiring third party to assume Soiltest's obligations under the Note; and (2) Soiltest shall not enter such a transaction unless the

acquiring third party meets certain financial criteria. These paragraphs are clear and unambiguous; by their ordinary and natural meaning, they apply to two distinct circumstances.

These provisions can be construed harmoniously. Under the terms of Paragraph 6, a third party which acquired both Soiltest and ELE would assume all obligations under the Note. These obligations would include those imposed by Paragraph 4, in the event the acquiring third party disposed of either ELE or Soiltest, as well as the affirmative covenants in Section 3, which require the transmittal of certain financial information concerning both Soiltest and ELE to the payee under the Note. Construing the Note as a whole, particularly in light of the "earn out" and both Paragraphs 4 and 6, the reasonable interpretation of the agreement is that the parties intended to combine ELE and Soiltest profits for the determination of payment due under the Note so long as such combination was practical. Paragraph 6 insures that an acquiring third party will assume such an obligation, including the financial reporting requirements; Paragraph 4, on the other hand, provides the method to determine payment due under the Note when the profits of ELE and Soiltest can no longer be combined for purposes of the "earn out." These provisions protect the payee under the Note if one or both companies are disposed of, yet allow Soiltest the freedom to engage in such transactions if desirable.

Indeed, Manor admits in its reply brief that Paragraph 6 imposes upon an acquiring third party the obligation to combine the net income of Soiltest and ELE to determine payments due to the payee under the "earn out" provisions of the Note. Manor also recognizes that this paragraph protects the payee under the Note against the possibility that the acquiring third party might operate the companies in favor of ELE and to the detriment of Soiltest, thereby reducing or eliminating payments due under the Note. We disagree, however, with Manor's assertion that Paragraph 6 itself acknowledges that the noncontingent provisions of Paragraph 4 would have been triggered by a third-party acquisition of both companies.

■ By its express terms, Paragraph 4 does not apply to a transaction wherein both companies are disposed of; it is implicated only by a transaction wherein either ELE or Soiltest is disposed of. In essence, Manor asks this court to substitute "and" for "or" in Paragraph 4. The words "and" and "or" ordinarily are not commutual terms; they should not be considered interchangeable absent strong supporting reasons. (*Chicago Land Clearance Comm'n v. Jones* (1957), 13 Ill. App. 2d 554, 559, 142 N.E.2d 800.) Since Paragraphs 4 and 6 can be interpreted consistently with one another without chang-

ing the expressed wording, no basis exists for a substitution of "and" for "or."

■ As a result of the corporate reorganization, Buehler International, a third party, succeeded to substantially all the assets of Soiltest and ELE. Since both Soiltest and ELE were involved, Buehler assumed the various obligations imposed by the Note, including the responsibility to combine profits of both companies for purposes of calculation under the "earn-out"; the alternative method of payment detailed in Paragraph 4, which would be necessary if either ELE or Soiltest individually was sold, was not mobilized. Therefore, as correctly found by the circuit court, 40% of the outstanding principal balance did not become fixed and noncontingent.

Manor's argument, that such an interpretation means Paragraph 4 would not be triggered "as long as what happens to one company happens to the other," misconstrues the language of the agreement and purpose behind Paragraph 4, which was intended to provide protection for the payee under the Note in the event that the profits of ELE and Soiltest no longer could be combined. If both Soiltest and ELE were liquidated, as posited by Manor, Paragraph 6 would not be implicated since no third party would "succeed to substantially all the assets" of both companies. Further, a combination of profits would be impossible, and the noncontingent provisions of Paragraph 4 would be applied. Nowhere does the Note suggest that if the "status quo remains the same" between the companies, Paragraph 4 would never be put into operation; however, Paragraph 6 is implicated when *both* Soiltest and ELE are acquired by a third party.

Manor next suggests that an intracompany transaction was intended to fall within Paragraph 4, in reliance upon an express exclusion in the contract of the Ciro-Soiltest merger. Manor observes that this merger was the only intracompany transaction explicitly excluded from invoking the noncontingent provisions of Paragraph 4; it concludes that "[t]he expression in a contract of one or more things of a class implies the exclusion of all not expressed." (*Suga v. Suga* (1962), 35 Ill. App. 2d 355, 359, 182 N.E.2d 922.) If *only* Soiltest or *only* ELE was transferred by an intracompany reorganization, the noncontingent provisions would have been activated. Indeed, the merger of Soiltest with Ciro would have launched Paragraph 4 absent the aforementioned exclusion, since *only* Soiltest, and not ELE, was involved. As noted above, however, *both* Soiltest and ELE were acquired by Buehler in the reorganization. Even were this court to adopt Manor's contention that an intracompany reorganization constituted a "sale" or "other disposition" for purposes of the Note, under the circum-

stances of this case, Paragraph 4 was not implicated.

In a footnote, Manor also disputes defendants' claim that both companies were sold by Mowlem PLC to the same third party; it claims that Soiltest and ELE were "sold separately, at different times, by different parent companies," and ultimately, to different parties: Buehler International and its subsidiary, Buehler Holding. In reviewing the transaction as a whole, ELE and Soiltest became subsidiaries of Buehler International pursuant to the comprehensive corporate reorganization of Mowlem PLC. Such a transaction, considered in broad perspective, is in harmony with the Paragraph 6 language of the Note, and allows the profits of ELE and Soiltest to be combined. Any other characterization of Mowlem PLC's actions exalts form over substance and disregards the intent of the parties as determined from the Note as a whole.

The circuit court correctly found that the payments requested by Manor did not become due and owing under the Note. Summary judgment was granted properly for defendants, and must be affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.