625 N.E.2d 293 (1993)
253 Ill. App.3d 256
192 Ill.Dec. 333
SCOTT STAINLESS STEEL, INC., an Illinois Corporation, Plaintiff-Appellant,
v.
NBD CHICAGO BANK, an Illinois Banking Corporation, Defendant-Appellee.
No. 1-92-0196.
Appellate Court of Illinois, First District, First Division.
September 7, 1993.
*295 Office of Alan O. Amos & Associates, P.C., Chicago (Marilyn Martin, of counsel), for plaintiff-appellant.
Office of Schopf & Weiss, Peter V. Baugher, Chicago (Bradley P. Nelson, of counsel), for defendant-appellee.
Presiding Justice MANNING delivered the opinion of the court:
This is an appeal by plaintiff Scott Stainless Steel corporation from a judgment of the circuit court granting summary judgment in favor of defendant NBD Bank Chicago and against plaintiff. Plaintiff sought to recover $18,223.54 from defendant based on the theory that the bank had wrongfully set-off its account in that amount. For the following reasons we affirm:
The record reveals that about April 11, 1989 plaintiff, Scott Stainless Steel Corporation (Scott), was a steel distributor. Larry Scott, an attorney, was a shareholder and also vice president of Plaintiff. Plaintiff maintained its corporate bank account with NBD Chicago Bank. NBD Chicago is owned by NBD Illinois, which is in turn owned by NBD Bancorp. NBD Bancorp also owns NBD Detroit.
On April 11, 1989 plaintiff received an order from Natco, one of its customers, for 20,000 pounds of steel. Natco maintained a running account with plaintiff, but agreed to pay in advance of shipment for its order placed April 11, 1989. On May 3, 1989 Natco gave plaintiff a check for $24,300 to pay for the order. This check numbered 1885 was drawn on NBD Detroit, which was Natco's bank. On May 4, 1989 Scott presented the check for payment at a branch office of NBD Detroit and was advised that the check would not be honored. The following day Scott presented the check again, but it was not honored for the second time.
On May 8, 1989, Scott contacted his bank, defendant NBD Chicago, and was advised to deposit the check for collection, which he did. On May 16, 1989, Scott spoke with Natco's president who advised him that there were sufficient funds in the account to cover the check. On that same date Natco placed a stop payment order on that check. Natco also wired an amount of at least $24,300 to NBD Detroit for deposit into its checking account, but because of the late arrival of the wire transfer the monies were not deposited on that date.
On May 18, 1989, NBD Detroit consulted with its legal department and determined that the stop payment order from Natco was received within time for the bank to act on it, and the bank decided to honor the stop payment request. On May 19, 1989, NBD Detroit notified Scott that it would honor Natco's stop payment order. At Scott's request, the president of defendant entered into negotiations with NBD Detroit seeking to have NBD Detroit deny the stop payment and credit Scott's account.
NBD Detroit and defendant entered into an agreement whereby NBD Detroit would honor the check if defendant agreed to indemnify NBD Detroit if Natco challenged the payment and NBD Detroit asked for the return of the money. This agreement between NBD Detroit and NBD Chicago was an oral agreement. Defendant then advised plaintiff that as a condition precedent for payment of the check, plaintiff would have to enter into an indemnification agreement with it. On May 22, 1989, plaintiff drafted an indemnification agreement and sent it to defendant. The agreement stated:
"Scott Stainless Steel, Inc. fully indemnifies NBD Chicago against any and all loss NBD Chicago may incur by reason of that certain check No. 1885 from Natco Alloys Inc. in the amount of twenty-four thousand, three hundred dollars ($24,300) drawn on the NBD Bank in Taylor, Michigan, account # XXXXX-XX. In the event said check is ever challenged and NBD Chicago must pay any amount to NBD Detroit for said check, Scott Stainless Steel, Inc. will reimburse NBD Chicago for the amount it must Pay NBD Detroit."
About May 26, 1989, plaintiff's checking account with defendant was credited in the amount of $24,300. About June 22, 1989, *296 NBD Detroit received notice from Natco's attorney that Natco was challenging the bank's payment of the $24,300 check. From June 22 through August 25, 1989, Natco continued to request that NBD Detroit return the funds to its account. After consulting with its legal staff, NBD Detroit determined that it should return some of the amount credited to plaintiff's account, and after being advised by Natco that an amount of $6,076.46 was owed to plaintiff, NBD Detroit returned $18,223.54 to Natco's account. NBD Detroit notified defendant that it had returned that amount to Natco's account and that pursuant to their oral indemnification agreement, NBD Detroit would debit defendant's account for the $18,223.54 paid out to Natco. Defendant then exercised it rights under the written indemnification agreement between defendant and plaintiff and debited plaintiff's account to recover the amount paid out to NBD Detroit.
On May 22, 1990, plaintiff filed an amended complaint alleging that defendant breached its contractual relationship with plaintiff by debiting plaintiff's account. Defendant filed an answer admitting that plaintiff had funds on deposit with the bank but denied a breach of the contractual relationship. Defendant alleged that an indemnification agreement existed between plaintiff and defendant by which it was entitled to debit plaintiff's account. Defendant also raised as affirmative defenses pursuant to the indemnification agreement it was entitled to recover the monies and that under section 4-407 of the Uniform Commercial Code (Ill.Rev.Stat.1989, ch. 26, par. 4-407) it had a right of subrogation.
On September 6, 1991, plaintiff filed a motion for summary judgment alleging that defendant could not support its affirmative defense of subrogation because no evidence had been supplied to show the threshold requirements for subrogation under the UCC and because no evidence had been introduced to show that the defendant was more than a volunteer with respect to its claim as subrogee. Plaintiff further alleged that the indemnification agreement was unenforceable under the UCC, and that it had not been given an opportunity to investigate and rebut the claims of Natco before the account was debited. On October 15,1991, defendant filed a cross-motion for summary judgment supported by depositions of two witnesses who testified to the existence of the indemnification agreement.
On December 16, 1991, after hearing argument in support of the motions for summary judgment, the court granted defendant's motion and denied plaintiff's motion and plaintiff appealed.
On appeal plaintiff argues that the trial court erred in denying its motion for summary judgment and entering summary judgment in favor of defendant.
Plaintiff first asserts that the trial court erred in granting summary judgment in favor of defendant because the indemnification agreement violates the Uniform Commercial Code (Ill.Rev.Stat. 1989, ch. 26 et seq.). Specifically plaintiff contends that the indemnity agreement did not address the requirements of Article 4. Plaintiff alleges that the effect of the indemnification agreement was to vary the language and intent of sections 1-203 and 4-103(1) of the Code.
Section 1-203 reads:
"Every contract or duty within this Act imposes an obligation of good faith in its performance or enforcement."
Section 4-103(1) states:
"The effect of the provisions of this Article may be varied by agreement except that no agreement can disclaim a bank's responsibility for its own lack of good faith or failure to exercise ordinary care or can limit the measure of damages for such lack or failure; but the parties may by agreement determine the standards by which such responsibility is to be measured if such standards are not manifestly unreasonable."
Plaintiff asserts that under section 4-103(1), a bank may not attempt by contract to immunize itself from the terms of a Code provision or to disclaim responsibility for its own lack of good faith or failure to exercise ordinary care. Plaintiff maintains *297 that any agreement that attempts altogether to release a bank from its obligations under the Code is an agreement that varies the terms of the Code. (Available Iron & Metal Co. v. First National Bank (1977), 56 Ill.App.3d 516, 13 Ill.Dec. 940, 371 N.E.2d 1032.) Plaintiff contends that the indemnity agreement in the instant case violated the intent of section 4-103(1) and was thus unenforceable.
The clear language of section 4-103(1) authorizes a bank to enter into an agreement with its customers that modifies the provisions of Article 4 of the Code. The only limitations placed upon any such agreement is that the bank may not disclaim responsibility for its own lack of good faith or failure to exercise ordinary care. Here, the indemnification agreement between plaintiff and defendant provided that defendant would be entitled to full indemnification from plaintiff for any and all loss incurred by defendant for payment of the $24,300 to Natco. The agreement provided two conditions precedent be met before the indemnification occurred: (1) that Natco challenge the payment made by NBD Detroit; and that (2) NBD Chicago pay any amount of the $24,300 to NBD Detroit.
The evidence in the record supports the fact that Natco challenged the payment that NBD Detroit made to plaintiff. Christine Rueff stated in her affidavit that on or shortly after June 22 1989, NBD Detroit received notice from Natco's attorney demanding the return of the $24,300, and threatening to sue if the funds were not immediately returned. Further, on August 25, 1989 NBD Detroit returned $18,233.54 to Natco's account and requested that NBD Chicago honor the indemnification agreement by returning that same amount to NBD Detroit, which NBD Chicago did. Thus the two condition precedents were met, and defendant was entitled to exercise its rights pursuant to the agreement.
Plaintiff contends that the trial court's exclusive reliance on the indemnification agreement as the basis for granting summary judgment did not address the requirements of Article 4 of the Uniform Commercial Code. Plaintiff contends that section 1-203 requires that banks operate in good faith in generally exercising their rights under the Code, and that section 4-103(1) established that a bank may not attempt by contracting with its customers to immunize itself from responsibility for its own lack of good faith or failure to exercise ordinary care. Plaintiff argues that the indemnification agreement was, in effect, an attempt by defendant to accomplish by agreement that which is prohibited by statute.
We find plaintiff's argument unpersuasive. As stated earlier, the Uniform Commercial Code allows banks to enter into agreements with their customers modifying the Code, with the limitation that the bank cannot limit its responsibility for failing to exercise ordinary care, or failing to act in good faith. Plaintiff has not presented any evidence of the agreement's deficiency in these two areas, and we have not found that the agreement is deficient. We further find that, contrary to plaintiff's argument, defendant did suffer a "loss." Plaintiff argues that Natco did not prove a "loss" under section 4-403(3), and that consequently neither NBD Detroit or NBD Chicago had rights to which they could be subrogated. Plaintiff cites to authority outside this jurisdiction for the proposition that in proving a loss, the drawer must establish more than the mere debiting of his account. Dunnigan v. First Bank (1991), 217 Conn. 205, 585 A.2d 659.
Plaintiff has not provided any binding authority for its argument. Additionally, NBD Detroit paid out to Natco the amount of $18,223.54 We reiterate that the indemnification agreement was a valid and enforceable agreement under the Code. Because of the existence of the valid indemnification agreement, the rights of NBD Chicago were governed by the indemnification agreement between it and plaintiff.
Indemnification agreements are contracts, and, as such, are to be construed like any other contract. (Hanover Insurance Co. v. Smith (1989), 182 Ill.App.3d 793, 131 Ill.Dec. 335, 538 N.E.2d 710.) In construing indemnity contracts, the primary focus is to give effect to the intention *298 of the parties. (Gardner v. Padro (1987), 164 Ill.App.3d 449, 453, 115 Ill.Dec. 445, 517 N.E.2d 1131.) This is especially true when the intention of the parties is clear and unambiguous. (Sutton Place Development Co. v. Bank of Commerce and Industry (1986), 149 Ill.App.3d 513, 516, 103 Ill.Dec. 122, 501 N.E.2d 143.) The parties here expressly entered into the indemnification agreement with the intent to be bound by its terms. In fact, the agreement was drafted by Larry Scott, a licensed attorney, shareholder and vice president of plaintiff. The agreement was clear and unambiguous. Thus, we find that the indemnity agreement did not violate the Code.
Plaintiff next contends that defendant did not demonstrate a loss suffered by Natco which would have subrogated defendant to any rights of Natco. Plaintiff asserts that the payment of the check by NBD Detroit after a valid stop payment order was entered is inconclusive of whether Natco was entitled to repayment of the amount of the check. Plaintiff further maintains that there was no other evidence of loss suffered by NBD Detroit that would have triggered any rights in defendant, with the exception of allegations in a letter from NBD Detroit to NBD Chicago. Plaintiff argues that even if Natco had clearly established a legitimate claim unrelated to the current transaction, this would not evidence loss under section 4-403(3) of the UCC. Plaintiff maintains that where a check is given as payment on contract and the payee has enforceable rights against the maker based on the specific transaction, the bank is not liable because the drawer has not shown a loss within the meaning of section 4-403(3). (Dunnigan v. First Bank (1991), 217 Conn. 205, 585 A.2d 659.) Plaintiff asserts that because Natco did not prove a loss under section 4-403(3), then NBD Detroit and defendant had no rights to which they could be subrogated. Plaintiff maintains that the subrogee has no greater rights than does the subrogor in whose shoes he stands. Gable v. Reznick (1989), 183 Ill.App.3d 171, 131 Ill.Dec. 769, 538 N.E.2d 1325.
The record reveals that NBD Detroit was obligated to reimburse Natco for having paid out over a valid stop payment order. Having done so, the oral indemnity agreement entered into between NBD Detroit and defendant was activated. Plaintiff did not challenge the existence or validity of the agreement between NBD Detroit and defendant, and pursuant to that agreement, defendant would indemnify NBD Detroit for the amount paid to Natco. Defendant was not a mere volunteer, but fulfilled its obligation pursuant to the indemnity agreement between defendant and NBD Detroit. An indemnitee who makes a payment pursuant to a contractual obligation and under the belief that the indemnitee is liable is not a mere volunteer, and is entitled to reimbursement from the indemnitor. (United States Fidelity & Guarantee Co. v. Klein Corp. (1989), 190 Ill.App.3d 250, 257, 146 Ill.Dec. 848, 558 N.E.2d 1047.) The payment by defendant to NBD Detroit in the amount of $18,223.54 established a loss to defendant. Therefore, plaintiff's allegation is without merit.
Plaintiff further contends that the purpose of the indemnity agreement was to eliminate application of the terms of the UCC, and, therefore precluded by section 4-103. Specifically, plaintiff asserts that the indemnity agreement did not define a standard of care but rather sought to exculpate the bank absolutely and regardless of its own degree of negligence in discharging its duty to plaintiff.
The facts in the record reveal that the indemnification agreements entered into between NBD Detroit and defendant, and the indemnification agreement entered into between plaintiff and defendant did not disclaim defendant's liability for negligence or other intentional acts. In fact, it is clear that before the payment was made to plaintiff the banks considered their respective responsibilities to both Natco and plaintiff. Both defendant and Natco were in communication with plaintiff regarding the potential exposure to a challenge by Natco if the check was honored, and took action to reduce their risk and preserve the rights of all parties involved by entering into the *299 indemnification agreement. Plaintiff cites Sunshine v. Bankers Trust Company (1974), 34 N.Y.2d 404, 358 N.Y.S.2d 113, 314 N.E.2d 860, and Cumis Insurance Society, Inc. v. Girard Bank (1981), 522 F.Supp. 414, 32 UCC Reporting Service 877 (E.D.Pa.1981), for the proposition that a bank fails to exercise ordinary care when it enters into an agreement altering provisions of the UCC. In Sunshine, the depositor signed an agreement at the time he opened his account which agreement gave the bank a general right to charge back customer accounts at any time if the bank later found that, through negligence or otherwise, it paid an item improperly. In Cumis, a bank allegedly entered into an indemnity agreement with its depositor that exculpated the bank from liability in paying on checks bearing facsimile signatures. Both Sunshine and Cumis are distinguishable from the instant case. Here, the indemnification agreement was made as an accommodation for plaintiff. NBD Detroit was aware of the fact that the stop payment order was timely, and after entering into negotiations with NBD Chicago for indemnity, it decided to pay the check. This did not exculpate defendant from liability, nor did it give defendant a license to proceed negligently in its duties. Therefore, plaintiff's contention is without merit.
Plaintiff next maintains that the indemnity agreement was unenforceable due to vagueness and indefiniteness, and that it violated public policy and the good faith provisions of the UCC.
Plaintiff fails to point out a provision of the indemnification agreement wherein defendant purports to disclaim its obligation to exercise ordinary care and good faith. Plaintiff's claims are merely speculative and conjectural. Under the UCC the parties are given the authority to alter, by agreement, the rights and responsibilities thereunder. (Ill.Rev.Stat.1989, ch. 26, par. 4-103(1).) The indemnity agreement here was drafted and read by Larry Scott, a licensed attorney. Plaintiff could have included provisions ensuring that before the indemnification clause became effective defendant would have to present proof that NBD Detroit owed a debt to Natco, and that NBD Chicago be subrogated to the rights of Natco. Larry Scott drafted the indemnification agreement on behalf of plaintiff, and plaintiff cannot now complain that the agreement was drafted in bad faith. Any ambiguity in the contract must be construed against plaintiff. (Duldulao v. St. Mary of Nazareth Hospital (1987), 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314.
Plaintiff finally argues that the court erred in entering summary judgment because there were genuine issues of material fact that should have been resolved by the fact finder. Plaintiff failed to raise this issue below and has raised it for the first time on appeal. Therefore, the issue is waived. Board of Education v. Kusper (1982), 92 Ill.2d 333, 65 Ill.Dec. 868, 442 N.E.2d 179.
While summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of movant is clear and free from doubt. (Purtill v. Hess (1986), 111 Ill.2d 229, 240, 95 Ill.Dec. 305, 489 N.E.2d 867.) In determining whether a genuine issue of material fact exists, the trial court must construe the pleadings, depositions, admissions and affidavits on file strictly against the movant and liberally in favor of the opposing party. (Dietz v. Spalla (1989), 186 Ill. App.3d 742, 745, 134 Ill.Dec. 509, 542 N.E.2d 855.) Here, both plaintiff and defendant filed motions for summary judgment. The facts, pleadings and affidavits establish the existence of an indemnification agreement between plaintiff and defendant. Thus, there were no genuine issues of material fact to be resolved. The court noted that Larry Scott himself admitted in his deposition testimony that he drafted and signed the letter which indemnified NBD Chicago. The court concluded that there was no disputed validity to the stop payment order, and nothing ambiguous about the agreement. Under these circumstances we find that the trial court *300 did not err in granting summary judgment in favor of defendant.
Accordingly, the judgment of the circuit court of Cook County is affirmed.
Affirmed.
BUCKLEY and O'CONNOR, JJ., concur.