CSX TRANSPORTATION, INC.,
Plaintiff–Appellant,

v.

CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, INC., Defendant–Appellee.

No. 94–3145.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1995.

Decided July 31, 1995.

Carol M. Douglas, Mark N. Senak (argued), Robins, Kaplan, Miller & Ciresi, Chicago, IL, Arthur S. Beeman, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, for plaintiff-appellant.

Francis D. Morrissey, Michael A. Pollard, Thomas W. Cushing, Baker & McKenzie, Michael P. Connelly (argued), Thomas F. Tobin, Connelly & Schroeder, Chicago, IL, for defendant-appellee.

Before ALDISERT,* BAUER and FLAUM, Circuit Judges.

BAUER, Circuit Judge.

Over eleven years ago, on June 27, 1984, Chicago and North Western Transportation Company, Inc. ("CNW") entered into a written contract with the Baltimore and Ohio Terminal Railroad ("B & OCT"), under which

---

* The Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit is sitting by designation.

CNW received the right to operate its trains over certain tracks owned by B & OCT. The contract contained the following indemnity clause:

*Section VIII—Liability.*

8.1 North Western shall be responsible, without regard to negligence, for the consequences of any wreck, derailment or other accident involving trains, engines, cars or other rolling stock being moved by North Western or involving an employee of North Western which is caused by the condition of track or roadbed, engines, cars or other rolling stock being moved by North Western in either direction over trackage between the Proviso Yard of North Western and the Barr Yard of B & OCT under the terms of this Agreement.

CSX Transportation, Inc. ("CSX") is the successor corporation to B & OCT and succeeds to the rights and obligations of B & OCT under this contract.

On April 6, 1985, Frank Holdman, who was twelve years old, unsuccessfully attempted to board a moving train owned and operated by CNW on tracks included within the indemnity clause. Holdman fell under the wheels of one of the cars on the train and suffered an amputation of his left leg below the knee and a partial amputation of his right foot. On June 12, 1992, Holdman's father filed suit on behalf of Holdman against CNW, B & OCT, and Indiana Harbor Belt Railroad Company, Inc. ("IHB"), in the Circuit Court of Cook County, Illinois. The complaint alleged that CNW negligently failed to patrol the track and roadbed for children and that CSX and IHB negligently failed to erect and maintain a barrier which would have prevented children from accessing the railroads' right-of-way.

CSX tendered its defense to CNW during the pendency of the *Holdman* litigation pursuant to the indemnity clause. CNW refused to accept CSX's tender of defense. CNW settled with Holdman prior to trial for $175,-000. On March 4, 1994, a jury returned a verdict in favor of Holdman for $2,971,827.25 against CSX and IHB jointly and severally. CSX is obligated to pay the entire award under a separate agreement with IHB.

CSX filed this complaint for declaratory relief in the district court on January 12, 1993, seeking a determination of the rights and obligations of CSX and CNW under the indemnity clause. CSX asserted that CNW was obligated to defend and indemnify CSX in the *Holdman* litigation. Jurisdiction was premised upon diversity of citizenship. The parties filed cross-motions for summary judgment after the *Holdman* jury rendered its verdict. The district court held that CNW had no duty to defend or indemnify CSX under the contract, granted CNW's motion for summary judgment, and denied CSX's motion.

■ We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court. We view the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party, in this case CSX. *Home Ins. Co. v. Chicago and Northwestern Trans. Co.*, 56 F.3d 763, 766 (7th Cir.1995); *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir.1993). Summary judgment is appropriate if the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We will affirm the judgment of the district court if no reasonable jury would render a verdict for the opposing party "if the record at trial were identical to the record compiled in the summary judgment proceeding." *Russell v. Acme–Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

■ As a federal court sitting in diversity, we apply the choice of law rules of the forum state to determine what substantive law governs this case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 478 (7th Cir.1995). We have recently reaffirmed our longstanding position that Illinois applies the "most significant contacts" test set forth in the Restatement (Second) of Conflicts § 188 (1971), to contract disputes. *Wildey v. Springs*, 47 F.3d 1475, 1481–83

(7th Cir.1995); *see Palmer v. Beverly Enters.*, 823 F.2d 1105, 1107–09 (7th Cir.1987); *id.* at 1113–14 (Easterbrook, J., concurring). Under this test, "the contacts relevant to a choice-of-law decision include 'the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicil[e], residen[ce], place of incorporation, and business of the parties.'" *Wildey*, 47 F.3d at 1483 (quoting *Palmer*, 823 F.2d at 1109–10). The contract between CSX and CNW was negotiated, signed, and performed in Illinois. *See* Restatement (Second) of Conflicts § 188(3) (1971) (if the place of contract negotiation and performance are the same, that state's law usually will apply). The tracks on which Holdman was injured were located in Illinois. Holdman filed suit in an Illinois court. Both CSX and CNW do business in Illinois. Illinois law therefore governs this case.

■ Indemnification agreements are to be construed like any other contract under Illinois law. *Scott Stainless Steel, Inc. v. NBD Chicago Bank*, 253 Ill.App.3d 256, 192 Ill.Dec. 333, 337, 625 N.E.2d 293, 297 (1993). "Under Illinois law, the primary objective in construing a contract is to give effect to the parties' intent." *Home Ins. Co.*, 56 F.3d at 767. Under the so-called "four corners rule," if the contract is unambiguous, the parties' intent must be determined from the language of the contract as a matter of law. *See, e.g., Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill.2d 440, 163 Ill.Dec. 510, 513, 581 N.E.2d 664, 667 (1991); *A.W. Wendell and Sons, Inc. v. Qazi*, 254 Ill.App.3d 97, 193 Ill.Dec. 247, 259, 626 N.E.2d 280, 292 (1993).

■ We have discussed the applicability of the "four corners rule" under Illinois law at length in two recent decisions, *Home Ins. Co. v. Chicago and Northwestern Trans. Co.*, 56 F.3d at 767–69, and *AM Int'l, Inc. v. Graphic Management Assocs., Inc.*, 44 F.3d 572, 574–76 (7th Cir.1995). We will not repeat our discussion in those cases but will summarize our conclusion: "objective" evidence of ambiguity, which is evidence "'that can be supplied by disinterested third parties,'" is admissible to establish that a contract is extrinsically ambiguous. *Home Ins.*

*Co.*, 56 F.3d at 768–69 (quoting *AM Int'l, Inc.*, 44 F.3d at 575). A contract is extrinsically ambiguous if it is clear on its face but means something else to a person who knows the context of the contract. *Id.; AM Int'l, Inc.*, 44 F.3d at 574–75. In contrast, a contract is intrinsically ambiguous if its language is "'reasonably and fairly susceptible to more than one meaning.'" *Home Ins. Co.*, 56 F.3d at 768–69 (citation omitted); *see Sigma Cos., Inc. v. Regas*, 255 Ill.App.3d 857, 194 Ill.Dec. 140, 144, 627 N.E.2d 256, 260 (1993). "Subjective" evidence of ambiguity, which is "the testimony of the parties themselves as to what they believe the contract means," is, with exceptions not relevant here, inadmissible to establish that a contract is extrinsically ambiguous. *AM Int'l, Inc.*, 44 F.3d at 575; *see Home Ins. Co.*, 56 F.3d at 768–69.

■ The indemnity clause, section 8.1 of the contract, is clear on its face and does not apply to the *Holdman* litigation. To be sure, the accident in *Holdman* involved a train, engine, and cars "being moved by" CNW on tracks covered by section 8.1. Section 8.1, however, only extends CNW's liability to an accident "which is caused by the condition of track or roadbed, engines, cars or other rolling stock being moved by North Western." The jury instructions in *Holdman* stated that Holdman was seeking damages against CSX for negligently failing to (1) erect and maintain a fence or other barrier which would have prevented children from accessing its right-of-way when it knew that children had access to its right-of-way; (2) adequately police or patrol its right-of-way; (3) channel children along its right-of-way to a safe crossing; and (4) warn children of the danger of slow-moving freight trains. Holdman did not contend that the accident was caused "by the condition of track or roadbed." The terms "right-of-way" and "roadbed" are separate and distinct in the railroad industry, of which both parties to the contract were members:

> The road-bed is the foundation on which the superstructure of a railroad rests. The roadway is the right of way, which has been held to be the property liable to taxation. The rails in place constitute the superstructure resting upon the road-

bed.... These two words, as applied to common roads, ordinarily mean the same thing, but as applied to railroads their meaning is not the same.

*Santa Clara County v. Southern Pac. R.R. Co.*, 118 U.S. 394, 413, 6 S.Ct. 1132, 1142, 30 L.Ed. 118 (1886) (citations and internal quotation marks omitted).

Not surprisingly, CSX disagrees with this interpretation of section 8.1. CSX first asserts that the clause "which is caused by the condition of track or roadbed, engines, cars or other rolling stock being moved by North Western" modifies only "involving an employee of North Western" by virtue of the immediately preceding word "or." CSX asserts that this clause does not apply to the *Holdman* litigation because Holdman was not an employee of CNW. Under CSX's interpretation of section 8.1, CNW is obligated to indemnify CSX because the accident in *Holdman* involved a train, engine, and cars being moved by CNW on tracks covered by section 8.1.

The word "or" immediately preceding "involving an employee of North Western" in section 8.1 cannot support the weight heaped upon it by CSX. At the outset, we point out that CSX's interpretation would establish CNW's liability for any accident "involving trains, engines, cars or other rolling stock being moved by North Western" on the specified tracks without limitation. Section 8.1 does not support such an expansive scope of CNW's liability. As a matter of grammar, the "which is caused by ..." clause is a subordinate clause which modifies "wreck, derailment or other accident," not "employee." Section 8.1 contains two participial phrases after "wreck, derailment or other accident" which begin with the word "involving." There is no indication in section 8.1 that the "which is caused by ..." clause should be limited to the second "involving" phrase. The more natural, and therefore appropriate, reading is that both participial phrases, like the "which is caused by ..." clause, modify "wreck, derailment or other accident."

■ Section 8.1, moreover, contains the word "or" five times. Other than being the median "or," nothing in section 8.1 indicates

that the third "or" parses the sentence in the manner proposed by CSX. We recognize that, under Illinois law, the words "and" and "or" "should not be considered interchangeable absent strong supporting reasons." *Manor Healthcare Corp. v. Soiltest*, 192 Ill. App.3d 934, 140 Ill.Dec. 68, 74, 549 N.E.2d 719, 725 (Ct.1989). Our interpretation of section 8.1 retains the disjunctive character of the third "or." At oral argument, CSX's counsel stated that it was quite possible that an accident involving a CNW train, engine, car, or rolling stock could occur without an employee of CNW, and that a CNW employee could be involved in an accident without the presence of a CNW train, engine, car, or rolling stock. The "involving an employee of North Western" phrase thus is not repetitive of the preceding "involving trains ..." phrase.

CSX next contends that, even under our interpretation of section 8.1, CNW is still required to indemnify CSX because the accident in *Holdman* was "caused by the condition of ... engines, cars or other rolling stock being moved by North Western." CSX asserts that the movement of the CNW train that injured Holdman is a "condition" of the engine and cars which triggers CNW's liability under section 8.1. We do not agree. "Clear and unambiguous terms in the contract must be given their ordinary and natural meaning." *Manor Healthcare Corp.*, 140 Ill.Dec. at 72, 549 N.E.2d at 723. "Condition" is defined as "[t]he particular mode or state of being of a person or thing." The American Heritage Dictionary 306 (2d College Edition 1991). "Movement" does not fit comfortably within this definition and is not ordinarily referred to as a "condition."

■ CSX's interpretation of "condition" also violates the Illinois principle of construction that a contract must be interpreted as a whole, giving meaning and effect to each provision. *Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 226–27 (7th Cir.1993); *Manor Healthcare Corp.*, 140 Ill.Dec. at 72, 549 N.E.2d at 723. CSX's interpretation renders the words "being moved by" in the "which is caused by ..." clause surplusage, since in its view movement

is a "condition." CSX's interpretation also establishes strict liability for CNW for any accident involving a CNW train. Most accidents involve moving trains because trains seldom injure people while stationary. At oral argument, CSX's counsel stated that CNW would even be liable under section 8.1 for an accident involving a stationary CNW train because "stationary" is also a "condition" of the engine and cars. If this is what the parties to the contract intended, one wonders why they did not just state that CNW shall be liable for any accident on or near a CNW train instead of using the language of section 8.1, most of which is rendered unnecessary under CSX's interpretation. CSX's interpretation is therefore untenable.

Because section 8.1 is clear on its face, we must consider whether any objective evidence establishes an extrinsic ambiguity in the contract. *Home Ins. Co.,* 56 F.3d at 770; *AM Int'l, Inc.,* 44 F.3d at 575. Objective evidence must first be presented to the court and is given to the jury only after the court concludes that the evidence establishes a genuine ambiguity. *Home Ins. Co.,* 56 F.3d at 768–69; *AM Int'l, Inc.,* 44 F.3d at 575. The only objective evidence upon which CSX relies is that CNW conducted itself differently in litigation involving Daniel Capehart.[1] Capehart was an eight-year old boy who, on August 15, 1985, was playing on a stationary CNW train on tracks covered by section 8.1. Capehart fell off the train and was injured when the train began moving. Capehart sued CSX, CNW, and other defendants for negligently failing to erect a fence or other barrier along the right-of-way. Capehart also alleged that CNW negligently failed to keep a proper lookout for children, negligently failed to warn the children that the stationary train would be moving, and negligently started moving the train forward.

CNW settled the *Capehart* litigation on behalf of all of the defendants, including CSX.

The *Capehart* settlement does not create a factual issue concerning the existence of an extrinsic ambiguity in section 8.1. CNW contends that it obtained a release from Capehart naming all of the defendants in order to preserve its right to seek contribution from its codefendants. *See Stro–Wold Farms v. Finnell,* 211 Ill.App.3d 113, 155 Ill.Dec. 545, 548, 569 N.E.2d 1156, 1159 (Ct. 1991) ("a tortfeasor who settles a claim is not entitled to contribution from another tortfeasor whose liability is not explicitly extinguished by name in the settlement" under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.*). CSX replies that this argument is disingenuous because CNW could have filed a cross-claim against CSX during the Capehart litigation, and because CNW did not seek contribution from CSX subsequent to the settlement. CSX may be correct, but what does this prove? *Capehart* had absolutely nothing to do with *Holdman.* The mere fact that CNW may have taken an inconsistent litigating position in a case similar to *Holdman* would not authorize a jury to ignore the clear language of section 8.1. If it did, then very few cases involving intrinsically unambiguous contracts would settle for fear of jeopardizing a party's position in future cases requiring an interpretation of those contracts. Moreover, the facts of *Capehart* and *Holdman* were not identical, and CNW may have reasonably believed that the applicability of section 8.1 to *Capehart* was a much closer question than its applicability to *Holdman.* Whether it actually was or was not makes no difference to us, because the *Capehart* settlement does not show that CNW and B & OCT intended section 8.1 to mean anything other than what it says. Section 8.1 is neither extrinsically nor intrinsically ambiguous.

1. CSX also contends that the district court created an extrinsic ambiguity through its use of the word "defective" in the following sentence of its opinion: "Nothing in the underlying litigation, or before the Court in this case, has been presented to suggest that the accident occurred due to some defective condition of the track, engine, cars or rolling stock." 1994 WL 406546, *4 (N.D.Ill.1994). The district court amended its opinion by striking the word "defective" from this sentence in its order denying CSX's Rule 59 motion to vacate the judgment. CSX nonetheless insists that the district court did not resolve the extrinsic ambiguity it had created by merely deleting the word "defective." Our reading of the remainder of the district court's opinion reveals that this argument is without merit and is not worthy of further discussion.

CSX's remaining arguments require little discussion. CSX asserts that CNW had a duty to defend it in the *Holdman* litigation. CNW had no duty to defend CSX because CNW had no potential obligation to indemnify CSX. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill. Dec. 684, 697, 514 N.E.2d 150, 163 (1987). And, in any event, section 8.1 does not impose a duty to defend on CNW as an aspect of the indemnification. *GTE N., Inc. v. Henkels & McCoy, Inc.*, 245 Ill.App.3d 322, 184 Ill.Dec. 215, 217, 612 N.E.2d 1375, 1377 (Ct.1993). CSX also asserts that CNW is liable for its attorneys' fees incurred in defending Holdman. Under Illinois law, "[a]ttorney fees are recoverable where required by the specific terms of a written contract of indemnity." *Nalivaika v. Murphy*, 120 Ill. App.3d 773, 76 Ill.Dec. 341, 343, 458 N.E.2d 995, 997 (Ct.1983). Section 8.1 does not mention attorneys' fees and therefore does not support an award of those fees. *See id.*

Because no reasonable jury could conclude that section 8.1 requires CNW to indemnify CSX in the *Holdman* litigation, the judgment of the district court is

AFFIRMED.