Evelyn BOSS, Plaintiff,

v.

**LA SALLE BANK, N.A., and Invesco Funds Group, Inc., Defendants.**

No. 98 C 7996.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 22, 1999.

Kenneth A. Dean, Chicago, IL, for Evelyn Boss.

Mark Edward Wilson, Susana R. Lukas, Clausen Miller P.C., Chicago, IL, for La Salle Bank N.A.

Andrew Theodore Staes, Jeffrey Neal Cole, James A. Murphy, Stephen David Scallan, Cole & Staes, Ltd., Chicago, IL, for Invesco Funds Group, Inc.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This case arises in the sad aftermath of a family feud. Evelyn Boss and her stepfather John Black had about $97,000 in a joint tenancy account at La Salle National Bank ("La Salle Bank") that invested in four mutual funds managed by Invesco Funds Group ("Invesco"). In late October and early November of 1997, Black telephoned Invesco to request checks for the full amount in the account. Invesco sent him five redemption checks made payable to Black and Boss as "JT TEN," or more precisely to:

John B. Black

Evelyn Boss JT Ten,

which Black indorsed by himself, without Boss's signature, and negotiated. Boss, displeased by this conduct, decided to sue. Rather than going after her stepfather, she went after LaSalle Bank, alleging conversion, and against Invesco, alleging breach of contract and fiduciary duty as well as conversion. I have already dismissed LaSalle Bank from this action. *See*

*Boss v. LaSalle Bank and Invesco Fund Group,* No. 98 C 7996 (N.D.Ill. Mar.26 1999) (unpublished order). Invesco now moves for summary judgment on all remaining counts, which I grant.

In a diversity case I apply federal procedural law and state substantive law. *Dawn Equipment Co. v. Micro–Trak Systems, Inc.,* 186 F.3d 981, 986–87 (7th Cir. 1999) (citing *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp,* 165 F.3d 1087, 1090 (7th Cir.1999); Fed.R.Civ.P. 56(c). I view the record and all reasonable inferences to be drawn from it in the light most favorable to the non-moving party. *Fulk v. United Transportation Union,* 160 F.3d 405, 407 (7th Cir.1998). The state substantive law to be applied in this case is undisputedly the law of Illinois.

I address the contract and conversion claims first. Invesco argues that Boss released all claims against it when she signed a joint account application ("the Application") in 1996, containing language releasing Invesco from any liability for acting upon telephone instructions "reasonably believed to be genuine and in accordance with the procedures described in the prospectus" that Invesco issued with the account (the "Prospectus"), as long as Invesco acted "in good faith and under the authorizations and privileges contained in the application." The Application, incorporating relevant parts of the Prospectus by reference, is the contract at issue here.

Boss objects that the Application is not a general release, but a limited release that only applies to whether Invesco is liable for acting on telephone instructions, because the Prospectus says that Invesco. "employ[s] procedures which [it] believe[s] are reasonably designed to conform that telephone instructions are genuine. These may include recording telephone instructions and providing written confirmations of transactions initiated by telephone." I

agree with Boss that the release is limited, but am unclear about the relevance of this argument, since what is at issue here is precisely whether Invesco acted properly in releasing the funds to Black at his telephone request.

Boss argues that her claim falls outside the limited release because Invesco never alleged that it believed that Boss, and not just Black, instructed them by phone to release the funds. But she points to nothing in the Agreement or the Prospectus which says that Invesco must believe that a telephone request to release funds from an account held in joint tenancy was actually made by both parties as opposed to being authorized by both parties. Invesco's claim that it acted in good faith implies that it did believe that Black's telephoned order was authorized by both parties.

More to the point, Boss argues that Invesco failed to act "under the authorizations and privileges contained in this application," because the Application does not permit redemption by telephone alone. The Application contains the language "I wish to make redemption requests

☐ by telephone and writing
☐ only in writing".

Boss and Black checked the first box. Boss argues that the word "and" on the line she and Black checked means that a legitimate redemption request must be made both by telephone and in writing, and cannot be made by telephone alone, otherwise the language would read "or."

I recognize that, under Illinois contract law, the words " 'and' and 'or' should not be considered interchangeable absent strong supporting reasons." *CSX Transportation, Inc. v. Chicago and North Western Transp. Co., Inc.,* 62 F.3d 185, 190 (7th Cir.1995) (citing *Manor Healthcare Corp. v. Soiltest,* 192 Ill.App.3d 934, 140 Ill.Dec. 68, 549 N.E.2d 719, 725 (1989)). However, "in order to effectuate the intention of the parties to a contract, where the intention is evident, the word 'and' may be construed

to mean 'or.'" *Chicago Land Clearance Comm'n v. Jones,* 13 Ill.App.2d 554, 142 N.E.2d 800, 803 (1957). This construction "is never resorted to except for strong reasons, and the words should never be so construed unless the context favors the substitution," *id.,* but here, the purpose and context favor the substitution because the intention of the parties is evident. The Application incorporates the Prospectus by reference, and the Prospectus explains that "Fund shareholders may ... request *expedited* redemption of shares by telephoning redemption instruction to Invesco" (emphasis added). Telephoning would not expedite matters, or indeed serve any purpose at all, if one also had to write. The purpose of the provision, discernable from the Prospectus, supports a disjunctive reading.

Moreover, the Seventh Circuit directs me to "examine [the contract] as a whole, giving effect, to the extent possible, to all contractual provisions." *Bourke v. Dun & Bradstreet,* 159 F.3d 1032, 1038 (7th Cir. 1998) (*citing O'Rourke v. Access Health, Inc.,* 282 Ill.App.3d 394, 218 Ill.Dec. 51, 668 N.E.2d 214, 220 (1996)). Here, because there was no "☐ only by telephone" option, the two options given, "☐ by telephone and writing" and "☐ only in writing," are practically equivalent if I read "and" as exclusively conjunctive, and in that case, I could not give effect to all the provisions. This rule of interpretation, therefore, also supports a disjunctive reading. I accordingly read the redemption provision to mean that Boss and Black could authorize redemption by telephone or in writing or both. Invesco, then, acted "under the authorizations and privileges" contained in the Application.

█ Boss, however, is resourceful and tenacious. She argues that even if I allow a disjunctive reading of the redemption provision, Invesco exceeded its authorization because the Prospectus provides that "if payment ... is to be made to someone other than the registered owner(s), the signatures(s) must be guaranteed by ... an eligible financial institution." Boss reads this to mean that Invesco should have made the checks payable to Boss and Black conjunctively, but Invesco did not do this. Rather it made the check payable to:

John B. Black

Evelyn Boss JT Ten,

where that must be read disjunctively, that is, Black or Boss in the alternative. But, first, I do not see how the requirement follows from the cited language, or indeed how the provision would be triggered at all, since Black and Boss, the payees on the check, were the registered owners of the Invesco accounts.

Second, even if the provision were triggered and the disjunctive reading did follow from the language, that would not help Boss. In my previous unpublished order in this case, I have held that the check was indeed payable to either Boss or Black in the alternative because an instrument that is ambiguous as to whether it is payable alternatively can be cashed by either party. 810 ILCS 5/3–110(d). Boss voluntarily entered into a joint tenancy, and either joint tenant on a bank account may withdraw any funds in the account. 765 ILCS 1005/2(c). Therefore, Boss waived any requirement that the Application might otherwise have imposed on Invesco to make out any redemption checks to Black and Boss conjunctively rather than in the alternative. *Id.; see also In re Estate of Taggart,* 15 Ill.App.3d 1079, 305 N.E.2d 301, 306–07 (1973).

Boss objects that by the terms of the Illinois Joint Tenancy Act, Black would have had such free access to their account only if there had been a written agreement authorizing unilateral withdrawals, and there was no such agreement here. Invesco therefore converted funds to which she was entitled as well as breaching the contract in the Agreement. But first, the law does not demand a written agreement. The statute, slightly edited, reads:

When a deposit in any bank ... transacting business in this State ... [is] made in the names of 2 or more persons payable to them ..., the ... [contents

of the account] may be paid to any one of those persons ..., and when an agreement permitting such payment is signed by all those persons ... the receipt or acquittance of the person so paid shall be valid and sufficient discharge from all parties to the bank for any payments so made.

765 ILCS 1005/2. Boss wants me to read the statute to say that the contents of an account owned in joint tenancy may be withdrawn *only when* there is an agreement permitting such payment. But there are two independent provisions, not one allowing unilateral withdrawals upon the existence of a written agreement. The statute is not artfully drafted, but its meaning is plain enough. It says that: (1) the contents may be paid to either joint tenant, and (2) if there if a written agreement, that is sufficient to discharge the bank from responsibility for payments made under the agreement. The normal rule is that "where the statute's language is plain, the court's function is to enforce it according to its terms." *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 680 (7th Cir.1997). Boss does not argue that Illinois courts would depart from that rule here. Invesco was therefore in compliance with the law.

■ Finally, Boss argues that Invesco owed her a fiduciary duty, which it breached in making out a check negotiable by Black alone. An investment advisor may be deemed a fiduciary if he renders advice pursuant to an agreement, is paid for that advice, and had influence approaching control over investment decisions. *Wolin v. Smith Barney, Inc.*, 83 F.3d 847, 849 (7th Cir.1996) *(disapproved on other grounds by Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997) (ERISA context)). I agree that a mutual fund manager owes a fiduciary duty to its individual clients: what such a manager does is in effect make the investment decisions for customers who are typically innocent of financial knowledge in exchange for a fee. If that does not create the conditions for a fiduciary duty, nothing does. However, Boss fails to show that Invesco breached the fiduciary duty it certainly owed her, because the basis of her claim is that the duty was breached by the unauthorized redemption and payout, and I have already determined that there was no unauthorized redemption and payout.

Despite Boss's imaginative arguments, I therefore grant summary judgment to Invesco on Boss's claims of breach of contract (Count II), breach of fiduciary duty (Count III), and conversion (Count IV), direct against Invesco. Since I have already dismissed Boss's claim against LaSalle Bank (Count I), this case is terminated.